EVERINGHAM vs. MEIGHAN.

*August 31 — September 19, 1882.*

*Gaming grain contracts: Compromise.*

1. The decision in *Barnard v. Backhaus*, 52 Wis., 593, as to the invalidity of gaming grain contracts, approved, and the doctrine of that case re-affirmed.

2. No compromise by the parties of differences in respect to clearly illegal contracts and transactions can purge them and produce a valid claim. *Melchoir v. McCarty*, 31 Wis., 252.

3. So *held*, where the contract was one for the purchase and sale of grain, by the plaintiff for the defendant, *in form* for future delivery, but where in fact no grain was intended to be, or ever was, received or delivered, and where, a difference having arisen between the parties as to who should bear the losses incurred in such speculation and paid by the plaintiff, it was agreed that a part of such losses so paid should be borne by the latter, and that the balance thereof be paid to him by the defendant.

APPEAL from the Circuit Court for *Milwaukee* County. The case is stated in the opinion. The jury were directed to find a verdict for the plaintiff, and from the judgment entered pursuant to such verdict the defendant appealed.

For the appellant there was a brief by *Markham & Noyes*, and oral argument by *Mr. Noyes*. They argued, among other things, that the plaintiff's reduction from the "scalping

account" was a voluntary act without consideration, binding upon neither party, and did not preclude the defendant from contesting his liability to the plaintiff on the gaming transactions covered by that account. *Otto v. Klauber*, 23 Wis., 471; *Calkins v. State*, 13 id., 389. If the negotiations at that time were in the nature of an accounting, and the result arrived at, an account stated, the defendant could then, also, go back of it and show the illegal and void contracts. *Melchoir v. McCarty*, 31 Wis., 252, and cases cited; *Dunbar v. Johnson*, 108 Mass., 519; *Chace v. Trafford*, 116 id., 529; *White v. Campbell*, 25 Mich., 463; *Bullard v. Raynor*, 30 N. Y., 197. In order to form a basis for a compromise which will be binding, there must have been a claim in dispute, a refusal to pay, and such a defense threatened as to make the claim a doubtful one in the mind of the party who finally makes a concession for the purpose of settlement. *Bunge v. Koop*, 48 N. Y., 225. But, conceding that there is a distinction between a settlement on "accounting" and a settlement by "compromise," and that the negotiations between the parties were of the latter nature, the result is the same. The statute against gaming contracts cannot be evaded, or the penalty avoided, or the taint of illegality removed, by the flimsy shift or pretext of a compromise agreement founded on the same identical consideration, or partly the same. The defendant cannot be bound by his promise to pay a portion of this "scalping account" any more than if he had promised to pay the whole. "A promise to pay for a past consideration for which there is not and never has been any legal liability on the part of the party promising, does not make a contract binding in law." *Frey v. Fond du Lac*, 24 Wis., 204; *Melchoir v. McCarty, supra; Hooker v. Knab*, 26 Wis., 511. The following are some of the many authorities, all of which hold that a compromise of a claim growing out of, or connected with, an illegal transaction, whether *malum in se* or *malum prohibitum*, is void and of no binding

effect: *In re Green*, 7 Biss., 338; *Johnson v. Cooper*, 2 Yerg., 524; *Rucker v. Wynne*, 2 Head, 617; *Wynne v. Callander*, 1 Russ. Ch., 293; *Miller v. Larson*, 19 Wis., 463; *Schultz v. Culbertson*, 46 id., 313; *Partridge v. Hood*, 120 Mass., 403; *Jones v. Rice*, 18 Pick., 440; *Lyon v. Waldo*, 36 Mich., 345; *Snyder v. Willey*, 33 id., 483; *Henderson v. Palmer*, 71 Ill., 579; *Kidder v. Blake*, 45 N. H., 530. Even an agreement to settle and forbear suit, where there is no legal cause of. action, is void. *Palfrey v. Railroad Co.*, 4 Allen, 55; Chitty on Con. (7th Am. ed.), 35. If a compromise was made as claimed, yet the evidence shows it was not performed as agreed; not being so performed it was of no avail, and not binding on the parties. *Piper v. Kingsbury*, 48 Vt., 480; *Brown v. Spofford*, 5 Otto, 484; *Memphis v. Brown*, 1 Flippin, 188; *Spring Co. v. Knowlton*, 13 Otto, 49.

For the respondent there was a brief by *Jenkins, Elliott & Winkler*, and oral argument by *Mr. Winkler*. The promise of the defendant to pay the $1,000 was based on a sufficient and lawful consideration. It is not disputed that the plaintiff had an account against the defendant amounting to over $2,200, most of which arose out of speculations' in which the plaintiff acted as the agent of the defendant. Whether these speculations were gambling transactions or not, presented questions, both as to law and fact, of no little difficulty. Upon the doubtful solution of these questions, depended the question whether the defendant owed the plaintiff over $2,200 or nothing. Such being the case, and a dispute having arisen between the parties involving a refusal on the part of the defendant to pay the plaintiff's claim, a compromise was effected, the defendant promising to pay $1,000, and the plaintiff on the faith of such promise renouncing the greater part of his claim. Such concession on the part of the plaintiff was the consideration which binds the defendant to his promise. *Cook v. Wright*, 1 B. & S., 559, 570. The authorities are infinite in number, that after

a compromise has been thus made, the party promising cannot escape his obligation by proof that the claim forborne was invalid. See *Haigh v. Brooks*, 10 Ad. & El., 309; *Longridge v. Dorville*, 5 B. & Ald., 117; *Callischer v. Bischoffsheim*, 5 L. R., Q. B., 449; *Ockford v. Barrelli*, 25 L. T., 504; 20 W. R., 116; *Kerr v. Lucas*, 1 Allen, 279; *Barlow v. Insurance Co.*, 4 Met., 270; *Russel v. Cook*, 3 Hill, 504; *O'Keson v. Barclay*, 2 Pen. & Watts, 531; *Brown v. Sloan*, 6 Watts, 421; *Fleming v. Ramsey*, 46 Pa. St., 252; *Farmers' Bank v. Blair*, 44 Barb., 641; *McKinley v. Watkins*, 13 Ill., 140; *Holcomb v. Stimpson*, 8 Vt., 141; *Sargent v. Larned*, 2 Curtis, 340; *Keefe v. Vogle*, 36 Iowa, 87; *Blake v. Peck*, 11 Vt., 483; 3 L. C. in Eq., 406. It is clearly. not essential that a suit should have been brought to make the compromise effective. A relinquished right is as good a consideration as a relinquished suit. *Cook v. Wright, Haigh v. Brooks*, and *Kerr v. Lucas, supra; Easton v. Easton*, 112 Mass., 438. To bring the case within these authorities it is only necessary to show that the plaintiff had a *bona fide* claim against the defendant, although it might be doubtful whether he could recover upon it. From what circumstance the doubt arises can, on principle, make no difference, and the courts mention no distinction of the kind. By the new agreement the party promising escapes the result which would follow if the doubt were solved against him. He gains this much of positive advantage. The other party loses his corresponding chance. This is the ground on which the new contract rests. What difference can it make of what nature the possible defense may be? It is not disputed in this case that the plaintiff believed in good faith that he had a good claim for the full amount of the account, and the course of litigation on claims of this character shows conclusively that the claim was not a hopeless one. *Barnard v. Backhaus*, 52 Wis., 593, had not been been decided, and in our inferior courts recoveries had been had on similar demands. Recoveries upon them had been had also

and sustained in *Gilbert v. Gaugar,* 8 Biss., 214; *Clarke v. Foss,* 7 id., 540; *Porter v. Viets,* 1 id., 177; *Wolcott v. Heath,* 78 Ill., 433; *Pixley v. Boynton,* 79 id., 351; *Logan v. Musick,* 81 id., 415; *Lehman v. Strassberger,* 2 Woods, 554; *McIlvaine v. Egerton,* 2 Rob., 422; *Tyler v. Barrows,* 6 id., 104; *Bigelow v. Benedict,* 70 N. Y., 202; *Rumsey v. Berry,* 65 Me., 570; and very many other cases. We do not claim that the compromise of an avowed and confessed illegal claim is sufficient consideration for a promise, but do contend that when a claim preferred in good faith, of which the owner honestly denies the taint of illegality, is in whole or in part released by way of compromise and a new promise made in consideration thereof, that new promise is binding and cannot be defeated by the plea that the original claim was, in point of fact, tainted with illegality.

ORTON, J. The defendant, engaged in the grain and produce trade at Cresco, in the state of Iowa, in 1876, shipped and consigned to the plaintiff, a commission merchant in the city of Milwaukee, grain and produce to be disposed of by him for the defendant, and drafts were drawn upon the plaintiff and paid by him from time to time on account of such shipments, and such business continued between the parties until July 1, 1878, at which time there was a balance of $151.80, on account of such shipments and sales, in favor of the plaintiff. A short time after the commencement of this business the defendant employed the plaintiff to buy and sell grain for him, *in form* for future delivery at the chamber of commerce in the city of Milwaukee, and to account to him for the profits thereof. This business was called by various names in the correspondence of the parties, such as "scalping," "deals," "options," "speculating deals," etc., while the former was called the "regular" business, and they were kept separate on the books and accounts. On the first day of July, 1878, the defendant was indebted to

the plaintiff on this "scalping" account in the sum of $2,109.64, for losses in the business. A short time before there had been a disagreement between the parties as to which should bear these losses, the defendant insisting that the plaintiff should bear the whole or part of them, and the plaintiff insisting that the defendant should bear the whole; and it was finally arranged — whether by compromise, settlement, accounting, or concession need not now be determined — that the scalping account should stand at $848.20, by deducting from the whole account $1,261.44, which sum, with the addition of $151.80, the balance of the regular account, made $1,000 to be thereafter paid. The parties continued their regular business of the shipment and sale of produce until 1879, with an occasional scalping transaction, and there was then a balance of $799.92, without interest, on both accounts, against the defendant, for which this suit is brought.

The plaintiff charges an accounting and a compromise of differences on July 1, 1878, by which this $1,000 was agreed to be paid. The defendant, in his answer, charges that said scalping business was a gambling transaction between him and the plaintiff, by which the plaintiff was to buy and sell grain for him without receiving or delivering any such grain, and without any intention of either party that any grain should be received or delivered, but with the intention only to pay or receive the differences between the prices named in the contract and the market rate, whichever way the same might be, and that pursuant to such contracts no grain was actually received or delivered, but such differences were so settled and adjusted, whereby the plaintiff claimed that he had lost the said sum of $2,109.64 up to July 1, 1878, and that the plaintiff deducted therefrom $1,261.44, and that the balance of $848.20 was to continue to be kept as an account separate from the account of the regular grain shipments. And the defendant further charged that all

such pretended losses upon such gambling transactions were incurred by the plaintiff by his failure and refusal to comply with his instructions in regard to the time and manner of purchasing and selling the grain under such gambling contracts. The testimony of the defendant clearly and positively supports his answer, and especially the allegations thereof relating to the transactions of the parties in the purchase and sale of grain in the city of Milwaukee, and at the chamber of commerce, and makes the contracts of the plaintiff, for such purchase and sale of grain, gambling contracts, and the employment of the plaintiff by the defendant, for that purpose, a gambling transaction, within the definition and authority of the case of *Barnard v. Backhaus*, 52 Wis., 593, and the testimony of the plaintiff rather corroborates than denies the testimony of the defendant in this respect.

The transaction out of which these pretended losses arose and in which they were incurred, according to the testimony of the defendant, was not only illegal and void, but criminal. The learned circuit judge gave to the jury a very long opinion concerning this transaction, and boldly, if not wisely, criticised the opinion of this court in *Barnard v. Backhaus;* but I do not understand him to have instructed the jury that there was not evidence establishing the illegality of this claim for losses as having been incurred by gambling transactions. The instruction appears to be that notwithstanding the original claim of $2,109.64 for these losses was void for that reason, yet, there having been differences concerning the same, it was compromised at a less sum, which became thereby a valid and lawful claim against the defendant. The learned judge says in his opinion to the jury: "As I understand the proofs, and I don't think there is any dispute on the subject, *Everingham* rendered his account to the defendant and the defendant objected to the validity of it, claiming they ought to bear the whole of these losses, and that they afterwards came to the conclusion that the question of

the validity of the claim should be settled between them by a compromise, the plaintiff bearing a portion of the loss and the defendant the balance, about $1,000. Now that, I understand, the law makes a good compromise. It is the relinquishment of mutual claims,— the one that the claim is valid, and the other that it is invalid — and their abandonment by the respective parties; and the settlement arrived at, I understand, constitutes a compromise. Compromises are fostered in the law." Certain parts of these sentences were excepted to by the defendant's counsel.

Is it quite correct to say that there was any difference between the parties, as to the *validity* of this claim for losses? There was no evidence whatever that the validity of the claim was questioned or considered. It was a gambling claim, and both parties were presumed to know that it was invalid. The only evidence as to any difference between them as to this claim was that the defendant insisted the plaintiff ought to bear the whole, or, at least, part of these losses, because they were incurred by his fault, and the plaintiff agreed finally to bear a large part of them, viz., $1,261.44, and the defendant agreed to bear the balance, or $848.20. There was no question made of the real amount of the losses incurred, and no question as to their validity. It was a question who should bear them — this and nothing more. This matter is important as bearing upon the right to order a verdict in the case, and here may be found the reason why it was done; and also important because the learned counsel of the respondent makes the same point in his brief. Suppose A. employs B. to bet for him at faro, or any other game of chance, and B. loses a large sum of money in the game, which he has paid, and demands payment of the losses of A., and there is difference of opinion between them as to the *validity* of the claim, and A. finally agrees to pay one-half of it and B. agrees to bear the other half of the loss himself, does this compromise make the claim legal?

By all authorities and in common reason it does not, for both parties are equally guilty by entering into such a gaming contract, being presumed to know that the transaction is illegal, and neither can enforce the contract or the terms of any agreement or compromise arising therefrom.    In such a case if B. had won at the game a large sum of money, most certainly A. could not recover it by action, or any part of it, which might be the result of a compromise of any pretended difference between them as to the validity of such a claim. Where there is no difference between the parties as to the facts which make the claim valid or invalid, legal or illegal, then there can be no basis of compromise on the question of its validity, for both parties are presumed to know whether the claim in such a case is valid or not.    It follows that this part of the opinion of the learned judge as an instruction to the jury is erroneous, and the point in the brief of the learned counsel of the respondent in relation to the compromise of claims of questionable validity, and the authorities cited to sustain it, are inapplicable to this case, unless there was a reasonable question and uncertainty at the time as to the validity of the claim, which there was not and could not be.

It may be proper to say here, once for all, that we are satisfied as to the correctness of the decision in *Barnard v. Backhaus*, as applicable to the facts of that case, and do not believe that it requires any vindication, support, or revision. Here the testimony of the defendant makes just such a case. The transaction, according to his testimony, was just as clearly gambling, by betting on the differences of market prices of grain at the chamber of commerce between two fixed dates, as gambling by betting at faro, poker, or other game of chance, or on a horse race, or an election, or any other uncertain and future event; and there can be no question of it in any intelligent mind, and quite likely there is not in the minds of those who operate in such " speculative

deals," and the danger of such a flagrant example of gambling so destructive to the public morals, because practiced by persons of accepted high standing and influence, consists in its being obscured by appearances of respectability and of lawful contracts. It is the duty of the courts to apply the law against gambling in all cases impartially, irrespective of the specious and seductive forms of this vice and crime, or of the social standing of those who are guilty, whether they are high or low, rich or poor, or whatever their standing in society, church, or state. It is apparent that this is precisely such a case as the learned counsel of the respondent concedes in his brief to be outside of the law making obligatory claims which result from a compromise of differences between the parties. He says, with his characteristic candor: "We do not claim that the compromise of an avowed and confessed illegal claim is sufficient consideration for a promise." This compromise is not different in any respect from a compromise of gains or losses of any other kind of gambling, and to hold it different, would necessitate also the holding that this transaction is not or less or other than a gambling transaction. The authorities cited by the learned counsel of the respondent, and his able and plausible argument on this question, are inapplicable to this case, and only apply to a case where the claim arose from a transaction or contract of a doubtful character, and which are not *certainly* illegal or invalid. I will not cite the numerous authorities which hold such dealing in options or betting on market differences are gambling transactions, for the question is at rest in this state by the decision in *Barnard v. Backhaus*, and I will not cite any of the numerous and uniform authorities which hold that a compromise of any pretended differences, in respect to clearly illegal contracts and transactions, cannot purge them and produce a valid claim, for the case of *Melchoir v. McCarty*, 31 Wis., 252, sets that question also at rest; and it is expected that these decisions will be hereafter accepted as the law of

this state, without cavil or criticism by inferior courts, and it is hoped that they will be so accepted by the bar. However, the brief of the learned counsel of the appellant, in which authorities on both questions are collated, is worthy of reference.

The testimony of the defendant tended to show that after the adjustment of July 1, 1878, it was agreed that wheat thereafter shipped by him should not be applied on the scalping account, but that the balance on that account should be paid only by gains or profits on future "speculative deals," so that he could draw fully on future shipments. To this effect he says he construed the promise of the plaintiff: "I will help you all I can; I will make it back for you." This testimony would tend to show that the defendant never promised to pay, *absolutely*, any portion of the losses on former "scalping transactions." This question was also taken from the jury by ordering a verdict. Finally, it is sufficient to say that the circuit court erred by withdrawing the case from the jury, and by ordering a verdict.

*By the Court.*— The judgment is reversed, and the cause remanded for a new trial.