[Sac. No. 734.    Department One.—December 21, 1900.]

JOSEPH SPIELBERGER, Respondent, v. CALIFORNIA THOMPSON, Appellant.

ACTION UPON NOTE—REDEMPTION OF PLEDGE—RETENTION AT MAKER'S REQUEST—CONSTRUCTION OF ANSWER—NONSUIT—ESTOPPEL.—In an action by the assignee of a note which had been pledged by the assignor as security for money which he had paid, but which was retained by the pledgee at the maker's request, under an answer denying that plaintiff is the holder of the note, an averment that the pledgee held it as trustee for the defendant is equivalent to an averment that it was in the defendant's possession, and the defendant is estopped from claiming a nonsuit on the ground that plaintiff was shown not to be the holder of it.

ID.—CONSIDERATION—DISMISSAL OF ACTION—PAYMENT OF PLAINTIFF'S ATTORNEY.—A note given for the purpose of securing the dismissal of an action to which the maker was a party defendant, for the amount of the fee of the plaintiff's attorney, who would not consent to the dismissal until his fee was paid, and which was thereafter dismissed, is upon a sufficient consideration.

ID.—DELAY IN DISMISSAL.—The fact that the dismissal of the action was delayed for several months after the execution of the note does

not affect the consideration, where it does not appear that plaintiff's attorney thereafter objected to the dismissal, and where it does appear that the delay was largely occasioned by the maker of the note.

ID.—INTENTION OF PARTIES—QUESTION OF FACT—FINDINGS.—The intention of the parties to the note in executing and receiving it is a question of fact, and where no fraud appears in its procurement, the findings of the court upon conflicting evidence that it was given in consideration of the dismissal of the pending action will not be disturbed.

APPEAL from a judgment of the Superior Court of Sacramento County. Joseph W. Hughes, Judge.

The following are the findings of the court in reference to the settlement and dismissal of the action referred to in the opinion: "That on the fourteenth day of August, 1896, there was pending in this court a certain action, No. 6452, in which action Louisa A. Oppenheim was plaintiff and Philip Oppenheim, Emanuel Oppenheim, and California Thompson, defendant herein, were defendants. That in the said action Emanuel Oppenheim had filed a cross-complaint against the said Philip Oppenheim and the said California Thompson. That on said day there was pending between the parties to said action negotiations for a settlement. That the said Emanuel Oppenheim had induced his mother, Louisa A. Oppenheim, to commence the action, and that the defendant herein and her brother, Philip Oppenheim, were anxious that the same should be dismissed and an amicable settlement of the controversy among them had. The said Emanuel Oppenheim agreed to consent to a dismissal of the action, provided that the attorney for plaintiff in that action should be paid his fee, amounting to the sum of fifteen hundred dollars, and the defendant herein agreed to pay the said fee of said attorney from her share in the settlement, and thereupon defendant executed and delivered to the said Emanuel Oppenheim the note described in the amended complaint. That the said note was given for a good and valuable consideration, and so as to induce the said Emanuel Oppenheim to have the said action dismissed. That in consideration of the delivery to him of said note, said Emanuel Oppenheim agreed that he would pay said attorney his fee and obtain a judgment dismissing the said action hereinbefore mentioned.

That the said fee of said attorney was paid by the said Emanuel Oppenheim, and the said action dismissed and a judgment of dismissal made and entered on the fourteenth day of March, 1897. That at all the times after the execution of the said note up to the time of the dismissal of said suit the said Emanuel Oppenheim was desirous of dismissing the said action, and appeared in court with his attorney on a number of occasions for the purpose of procuring the dismissal, but that the dismissal was delayed through the acts and conduct of the attorney representing the defendant herein in that action. That the defendant herein at no time rescinded the said contract or agreement to dismiss." Further facts are stated in the opinion of the court.

McKune & George, for Appellant.

The plaintiff should have been nonsuited for not producing the note at the trial. (*Crandall v. Schroeppel*, 1 Hun, 557; *Van Alstyne v. Commercial Bank*, 4 Abb. App. Dec. 449; *Kirby v. Sisson*, 2 Wend. 551; *Poole v. Smith*, 1 Holt N. P. 144; *Rowley v. Ball*, 3 Cow. 303[1]; *Blade v. Noland*, 12 Wend. 173.[2]) The note was without consideration, there being no promise of the payee, and no prejudice to him or benefit to her appearing to constitute a consideration. (Civ. Code, sec. 605.) The understanding of the parties could be proved by parol to show a want or failure of consideration. (*Julliard v. Chaffee*, 92 N. Y. 534, 535.)

Devlin & Devlin, and Edward J. Dwyer, for Respondent.

The evidence is sufficient to show that Clark held the note as the agent or trustee of the defendant, and his possession as her representative excuses the nonproduction of the note for cancellation. (Daniel on Negotiable Instruments, secs. 1483, 1484; 2 Parsons on Bills and Notes, 293.) The defendant cannot require indemnity, as he could not be injured. (2 Parsons on Bills and Notes, 304.) The law favors the settlement of family litigation, and the settlement and dismissal of such litigation is a good consideration for a bonus. (*McClure v. McClure*, 100 Cal. 339.)

---

[1] 15 Am. Dec. 266.        [2] 27 Am. Dec. 126.

GAROUTTE, J.—Plaintiff, as assignee, brings this action upon a promissory note against the maker thereof. Its execution and delivery are admitted, but various defenses to its payment are made. These defenses will be considered.

1. It is claimed that plaintiff was not the holder of the note, either when the action was brought or the trial had, and for this reason a nonsuit should have been granted. Under the facts disclosed by the record, there is nothing in the point. Before the note was assigned to plaintiff it was placed in the hands of C. W. Clarke as collateral security. The indebtedness for which the note was held as security was paid by plaintiff's assignor, and, under instructions from the defendant, Clarke refused to return the note to him. But, beyond this, defendant alleges in her answer that Clarke held the note as her trustee. If the note was in the possession of her trustee, it was in her possession, and she is foreclosed by her allegation in the answer from successfully urging a nonsuit upon the ground that plaintiff was not the holder of the note at the time of the trial.

2. It is claimed that the note was given without consideration. Let us pause for a moment and look at the facts. The Oppenheims were engaged in litigation regarding certain trust property; some were plaintiffs, others were defendants, still others cross-complainants. The payee and assignor of the note was a son. The drawer and defendant was a daughter. All parties litigant appeared to be anxious to bring the litigation to an amicable conclusion. Plaintiff's attorney in the litigation would not consent to a dismissal of the actions until his fee was paid; and his objection to a dismissal was a formidable bar in the way, looking toward the accomplishment of the desired end. The evidence at this point is somewhat conflicting as between the assignor of the note and the defendant; but upon this evidence the court found against the defendant's testimony, and we are only concerned in testing the sufficiency of the evidence to support the aforesaid finding. In substance, the payee of the note testified that he told defendant he had no money with which to pay the fee of plaintiff's attorney, and she then said: "If I would dismiss the case she would give me a note for fifteen hundred dollars to pay the fee of Mr. Johnson, and would pay the note when she got her money from the estate. The note

was given to me in consideration of the dismissal of the cases pending at the time. I immediately took numerous steps and tried numerous times by my attorneys to dismiss the action." It further appeared that the plaintiff's assignor paid the attorney his fee, and some time thereafter the action was dismissed. The dismissal was delayed for some months after the execution of the note, but this delay was largely occasioned by defendant herself. It was essentially a question of fact as to the intention of these two parties, respectively, in the making and receiving the note in controversy. There is no question of actual fraud involved in its procurement. It is not shown but that the attorney was in fact objecting to the dismissal of the action until his fee was paid. And there is no claim that he ever objected to its dismissal after the note was given. From all these facts and circumstances the finding of a sufficient consideration for the giving of the note will be upheld.

3. We find nothing in the offered and rejected documentary evidence which demands a new trial. We do not see that it had any substantial bearing upon the issues of fact under examination.

For the foregoing reasons the judgment and order are affirmed.

Van Dyke, J., and Harrison, J., concurred.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank, and filed the following opinion on the 19th of January, 1901:

BEATTY, C. J.—I dissent from the order denying a rehearing, and from the judgment of affirmance.

The statement of facts contained in the Department opinion is based exclusively upon the findings of the superior court, but those findings are assailed as being contrary to the evidence, and, in my opinion, several of those which are most material to the conclusion of the court are wholly unsupported by any evidence contained in the record.

The uncontroverted facts are that Philip Oppenheim was trustee of an estate of about seventy thousand dollars. He was.

also one of the beneficiaries, and the remaining beneficiaries were his mother, his brother Emanuel, the payee of the note in controversy here, and his sister, the maker of the note, and the defendant herein. Emanuel had induced his mother to commence an action to vacate the trust upon the ground of fraud. He and his brother and sister were made defendants in that action, but he, by answer and cross-bill, took sides with his mother in favor of dissolving the trust. His sister and his brother Philip answered, defending the action. The litigation having reached this stage, all parties became anxious to settle the controversy, and Emanuel represented to his sister that nothing stood in the way of a dismissal of the action and cross-action except the refusal of his mother's attorney to allow a dismissal until he should be paid, or secured in the payment of his fee, amounting to fifteen hundred dollars, and he agreed that if she would give him her note for that amount "he would pay said attorney his fee and obtain a judgment dismissing the said action." Upon this representation, and in consideration of this promise, the note in controversy here was executed and delivered.

It appears very clearly from all the evidence in the case that the representation was false and that the promise was never performed in its true and proper sense.

As to the representation, if there had been nothing in the way of a dismissal of the action except the objection of the plaintiff's attorney, that, so far from being a formidable obstacle, was no obstacle at all, for nothing could have been easier than to substitute another attorney (as was afterward done), who would make the motion to dismiss. But it will appear that the obstacles to dismissal were of another character, and the fault lay at another door. It is shown clearly by all the testimony, including the explicit admission of Emanuel himself, that he never took the note to his mother's attorney and never informed him that he had it. On the contrary, he kept it among his private papers for about a month and then pledged it as collateral for money borrowed of Charles Heisen, which money he used in his private business. The first thing this defendant heard of the note after delivering it was when it was presented with a demand of payment by Heisen's agent. She

did not pay it, and afterward Emanuel redeemed it and pledged it again to C. W. Clarke to secure other advances. This is what he did with the note which he had promised to use for the payment of his mother's attorney.

Nevertheless, he claims that he, by his attorneys, promptly moved to dismiss the action. He asserts that he and they made numerous attempts to procure the dismissal. He does not testify—and there is no evidence of any sort—that his mother's attorney moved to dismiss the action, or that he or she ever consented to a dismissal. And the finding of the court goes no further than the evidence on this point. It does not appear in the case anywhere, or in any way, that the plaintiff in that action ever consented to a dismissal, unless her consent is inferred from the finding that "the dismissal was delayed through the acts and conduct of the attorney representing the defendant herein in that action." But clearly this finding does not necessarily imply the consent of the plaintiff at the time of Emanuel's numerous attempts, which he claims to have made shortly after receiving the note. The final settlement and dismissal of the action was not reached for five months after the delivery of the note, and not until after a trial of the action and a decision in favor of the defendants on the merits, and then it was based upon further negotiations, and apparently upon new considerations independent of the payment of fifteen hundred dollars to the plaintiff's attorney. Some delay in this final settlement may have been due to the acts of defendant's attorney—as, for instance, his successful defense of the action; and at the same time it may be true that plaintiff did not consent in the beginning to a dismissal.

But if this fatal objection to the finding is waived and it should be held that, taking the findings altogether, they may be construed to mean that promptly after receiving the note Emanuel did not only move to dismiss his cross-action, but also procured his mother's consent and that of her attorney to dismiss her action, the only result is to put Emanuel in other difficulties. He confesses that he did not pay his mother's attorney —did not inform him that he had the note to secure him—but used the note to raise money for his private business. If, under these circumstances, the attorney, nevertheless, consented

to a dismissal of her action, it proves that the representation made by this defendant that he would not consent to a dismissal without payment or security for his fee was false, and the whole transaction a fraud.

But aside from this it was no performance of his contract for Emanuel to make motions and efforts to procure a dismissal of the actions. His contract was to procure a judgment of dismissal, and that without unreasonable delay. The findings of the court with respect to this matter are that Emanuel did pay the fee of his mother's attorney, that the action was finally dismissed, and that the delay in dismissing it was caused by the acts of the attorney representing ·the defendant. All these statements are literally true, but they are true with such qualifications as to render them wholly immaterial. The action was finally dismissed, but not for five months after the delivery of this note, which, during all that time, Emanuel had been using to raise money for his own purposes, and in the meantime the case had been tried and a decision rendered by the superior court that the trust was valid, advantageous, and free from fraud. Can it be claimed that a dismissal of the action under these circumstances was a compliance with Emanuel's agreement to procure a judgment of dismissal? When this defendant gave her note to secure a dismissal of that action the advantages that would have accrued to her by an immediate dismissal were that she would have been saved the trouble and expense of a trial and would have secured herself from whatever risk of being defeated in the litigation she may have had reason to apprehend. It may also be reasonably supposed that it was a motive of controlling weight with her to avoid the pain and scandal of a public trial of charges of fraud preferred by her mother against her brother. By his failure to dismiss the action before it had been tried, and he had been defeated on the merits, Emanuel deprived his sister of every possible advantage she could have expected when she gave her note.

But it is said in the opinion of this court that the delay in the dismissal was largely occasioned by the defendant herself. The only support for this statement is in the finding of the superior court, above quoted, which, it will be observed, does not say that the delay was caused by any fault of the defend-

ant, but by the acts and conduct of the attorney representing the defendant in that action. This, as above remarked, is true in a literal sense, but with a serious qualification. The same attorney represented this defendant and her brother Philip in the defense of that action, and it does appear by the testimony of Philip in this case that his attorney (who happened also to be his sister's attorney in defending that action) did in his behalf and upon grounds peculiarly affecting his interest, oppose, the motion of Emanuel to dismiss. There is not the slightest atom of evidence that he opposed the dismissal on behalf of the defendant, or at her instance, or for any benefit to her, and if he deemed that the interest of Philip, who was absent from the state, was opposed to a dismissal, it is not easy to see how the defendant could have prevented his opposition, or why she should be held responsible for it. Besides, the agreement of Emanuel to procure a judgment of dismissal bound him to obtain the consent of Philip, so far as his consent was essential, and to comply with whatever conditions Philip attached to his consent. There is no hint or suggestion in the findings or evidence that the defendant conspired with Philip to exact unreasonable conditions as the price of his consent, and to hold her responsible for his action is unjust and unwarranted.

Finally, with respect to the settlement of the case and the payment of plaintiff's attorney. The case was settled when there was nothing left to settle except the costs of a litigation which had been instigated (unjustly as it appears) by Emanuel, and which he should have paid. He did pay his mother's attorney, but the amount was only eight hundred dollars, instead of the fifteen hundred dollars he represented to be necessary, so that by his recovery in this action (he is represented here by his assignee) he makes a handsome bonus out of his sister and practically escapes the consequences of his fault by throwing the entire expense upon her. I think a more equitable result might have been attained without doing violence to any rule of law.