[S. F. No. 3509. In Bank.—January 3, 1907.]

# UNION COLLECTION COMPANY, Appellant, v. A. E. BUCKMAN, Respondent.

Promissory Notes—Illegal Consideration—Gambling Debt—Non-Negotiability — Defense against Purchaser. — Promissory notes given solely to evidence an alleged indebtedness for money lost by the payor to the payee at a gambling game in a gambling-house are based upon an immoral and illegal consideration; and where they are non-negotiable, neither the payee nor any subsequent purchaser can recover upon the notes.

Id.—Negotiable Notes—Prima Facie Evidence of Notice—Burden of Proof—Finding.—Even where notes are negotiable, proof that they are based upon an illegal consideration makes out a *prima facie* case of notice of the illegality to a purchaser thereof; and the burden of proof that he took without notice and for value before maturity is thrown upon him; and in the absence of such proof the finding must be that a plaintiff purchaser is not a holder without notice and for value.

Id.—Renewal Notes—Illegal.—Any renewal notes given in place of the original notes based upon an illegal consideration are affected with the same illegality. Merely repeating a promise based on an illegal consideration cannot give it validity.

Id.—Compromise of Illegal Notes.—Whatever may be the rule as to the effect of compromise of a doubtful claim, it can have no application when the claim involved in the compromise is wholly based upon an unlawful consideration, as distinguished merely from an insufficient consideration.

Id.—Province of Court to Withhold Relief—Public Policy—Consent of Parties Immaterial.—The rule that the courts will not entertain any action in affirmance of an illegal contract is not based upon any consideration for the party against whom the relief is sought, but upon considerations of sound public policy; and notwithstanding his express consent that the court may enforce such illegal contract, if the illegality appears, the court will *sua sponte* withhold all relief. No action of the parties, nor of their assignees, can so validate an illegal contract as to justify the court in enforcing it where its illegality is manifest.

Id.—Immaterial Omission in Findings.—Where, under the findings made in reference to the illegality of the consideration, the judgment for the defendant is supported, the failure to find upon other affirmative defenses in the answer is immaterial.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. Frank H. Kerrigan, Judge.

The facts are stated in the opinion of the court.

J. S. Reid, for Appellant.

William H. Chapman, and E. G. Knapp, for Respondent.

ANGELLOTTI, J.—This action was brought upon two certain instruments in writing, whereby defendant agreed to pay to one Reid, plaintiff's assignor, four hundred and ten dollars and interest. Judgment went for defendant, and plaintiff appeals therefrom, and from an order denying its motion for a new trial.

Defendant in his answer admitted the execution of the instruments, but alleged that they were given without any consideration whatever, and solely for the purpose of evidencing an alleged indebtedness for money lost to one McMahon at a gambling game, for which alleged indebtedness he had given notes to McMahon, which had been transferred to Reid, and in part renewal of which he had executed the instruments in suit. He further alleged that Reid took and held the McMahon notes with full notice of the circumstances under which they were given, and that plaintiff here had the same notice.

Upon the trial, in support of this defense and in response to the *prima facie* case made by plaintiff, the following facts were shown over the objection and exception of plaintiff:—

Defendant, at a gambling-house in San Francisco and in a gambling game participated in by McMahon, who was a winner therein, lost some thirteen hundred dollars, for which amount he then and there, at McMahon's request, gave to McMahon three promissory notes, which notes were nonnegotiable by reason of the presence in each of a stipulation for attorney fees in the event of suit. The evidence is sufficient to support the conclusion of the trial court that the original alleged indebtedness to McMahon was for money lost by defendant at this game and won by McMahon. There was no attempt whatever on the part of plaintiff to rebut the evidence of defendant upon this proposition. These notes were transferred to Reid for collection. Reid testified that he did not represent McMahon, but some other undisclosed person who was the equitable owner of the notes, but this we regard as immaterial. Reid subsequently brought suit upon one of

these notes for five hundred dollars. While this action was pending and ready for trial, defendant claiming that the note therein in suit and the other two notes were given solely to settle a gambling debt, an agreement was entered into between defendant and Reid, whereunder a dismissal of the suit was had and the three notes canceled in consideration of the giving of four notes for two hundred dollars each and interest by defendant to Reid. These notes were also non-negotiable. Upon these notes one hundred dollars only has been paid. Subsequently Reid brought another action upon two of these notes, and this action being at issue and ready for trial, and the defendant pleading therein want of consideration, in consideration of the dropping of the case from the calendar and its indefinite continuance, and ultimate final dismissal, in the event that defendant performed his part of the agreement, defendant executed the instruments in suit, which were also non-negotiable in form, and paid the jury costs. He also, in writing, purported to waive all defenses he might have to the claim of plaintiff, and to ratify the notes he had given.

The findings of the court were in accord with the allegations of the answer.

The questions raised on this appeal are presented by exceptions to the rulings of the trial court in admitting evidence as to the validity of the original notes, and by attacks on certain findings of the court on the ground of insufficiency of evidence to sustain them.

As already stated, the evidence sufficiently supports the conclusion of the trial court that the original notes were given to McMahon by defendant solely to evidence an alleged indebtedness for money lost by defendant to McMahon at a gambling game in a gambling-house. At the outset, therefore, it may be stated that it is clear that under the settled law of this state the consideration for such notes was *contra bonos mores* and unlawful (Civ. Code, secs. 1607, 1667), and that McMahon could not have recovered thereon. (*Bryant* v. *Mead*, 1 Cal. 441; *Gahan* v. *Neville*, 2 Cal. 81; *Carrier* v. *Brannan*, 3 Cal. 328; *Fuller* v. *Hutchings*, 10 Cal. 523, [70 Am. Dec. 746]; *Hill* v. *Kidd*, 43 Cal. 615; *Gridley* v. *Dorn*, 57 Cal. 78, [40 Am. Rep. 110].)

It is also plain that any assignee of McMahon of said notes could occupy no better position in a suit on the same than

CL Cal.—11

McMahon himself. The notes being non-negotiable, any de-
fense available against McMahon would have been available
against any assignee or person claiming under McMahon.
Such a contract on the part of the loser to pay the amount
of his losses at a gambling game could only be enforced if
negotiable in form, and then only by an innocent purchaser
before maturity for value.

It is also well settled that even in the case of negotiable
paper, where an action is brought by a subsequent holder,
when it is shown that the same was obtained from the maker
by fraud or duress, or that the consideration therefor was
illegal, a *prima facie* case of notice to such holder is made
out, and the burden of proving that he took without notice
before maturity and for value is thrown upon him. (*Fuller*
v. *Hutchings,* 10 Cal. 523, [70 Am. Dec. 746]; *Graham* v.
*Larimer,* 83 Cal. 173, 177, [23 Pac. 286]; *Jordan* v. *Grover,*
99 Cal. 194, [33 Pac. 889]; *Shain* v. *Goodwin,* 46 Fed. 564.
See, also, *Perkins* v. *Prout,* 47 N. H. 387; 93 Am. Dec. 449
and note.) It was said in *Graham* v. *Larimer,* 83 Cal. 173,
177, [23 Pac. 286], quoting from Parsons on Notes and Bills,
that the reason for this rule is that the presumption is that
the original party who has obtained such an instrument, and
could not recover upon it, will part with it for the purpose
of enabling some third party to recover upon it for his benefit,
and, quoting from Lord Campbell, that when the defendant
has proved fraud or illegality in the original holder, he has
raised a *prima facie* presumption that the plaintiff is agent
for that holder. In the absence of such rebutting evidence,
the finding must be that the plaintiff in such an action is not a
holder without notice and for value.

From what has been said, it is plain that, the illegal con-
sideration being made to appear, a recovery on the original
notes could not have been had in an action brought by Mc-
Mahon, or Reid, or Reid's undisclosed equitable owner, or this
plaintiff, and that any action thereon would have been with-
out any legal foundation whatever. The same thing is neces-
sarily true as to any notes given solely in renewal or in place
of such original notes. Merely repeating a promise based
on an illegal consideration cannot give it validity.

Plaintiff, however, relies upon the contention that the
compromises of the prior proceedings brought against defend-

ant constituted a sufficient legal consideration for the instruments in suit, and barred.all inquiry here as to the nature of the original transaction between defendant and McMahon.

It cannot, of course, be successfully disputed, that the compromise of a doubtful claim asserted and maintained in good faith constitutes a sufficient consideration for a new promise, even though it may ultimately be found that the claimant could not have prevailed. This is true whether the claim be in suit or not, but the rule is specially applicable where legal proceedings to enforce the asserted claim have been commenced and are pending and the proceedings are discontinued in pursuance of such compromise. (See *Spielberger* v. *Thompson,* 131 Cal. 55, [63 Pac. 132, 678]; *McClure* v. *McClure,* 100 Cal. 339, [34 Pac. 822]; *Rohrbacher* v. *Aitkin,* 145 Cal. 485, [78 Pac. 1054].) As to the effect of a compromise of a pending action, some general language of such nature has been used by some text-writers and courts as would, taken alone, warrant the contention of plaintiff that the compromise of the action in any case constitutes a sufficient consideration for a new promise and is a bar to all inquiry as to the merits of the original claim. (See Beach on Modern Law of Contracts, sec. 177.) Such, undoubtedly, should ordinarily be the effect of a compromise agreement made in good faith of a claim honestly asserted, for it is the policy of the law to discourage litigation and allow the parties to settle their *bona fide* disputes amicably. An examination of the authorities, however, discloses the fact that it has generally been recognized that to make a compromise of a claim, even though the same be in suit, sufficient to constitute a consideration for a new promise, the claim must not be wholly without foundation and known to the claimant to be so. (See 6 Am. & Eng. Ency. of Law, 2d ed., 714; 8 Cyc. 503, 505, 507, 509; 9 Cyc. 346; Beach on Modern Law of Contracts, sec. 176; *Emery* v. *Royal,* 117 Ind. 299, [20 N. E. 150]; *Pitkins* v. *Noyes,* 48 N. H. 294, [97 Am. Dec. 615, 2 Am. Rep. 218]; *Cruetz* v. *Hill,* 89 Ky. 429, [12 S. W. 626]; *Everingham* v. *Meighan,* 55 Wis. 354, [13 N. W. 269]; *Grandin* v. *Grandin,* 49 N. J. L. 510, [60 Am. Rep. 642, 9 Atl. 756]; *Gould* v. *Armstrong,* 2 Hall, 290, 294.) An examination of the cases cited by Mr. Beach in support of the rule stated by him in section 177 of his Modern Law of Contracts shows that in many of those cases

the courts were careful to state that there was no fraud or want of good faith on the part of the plaintiff in the prosecution of the original action which was compromised, while in the other cases the statement sustaining the literal text was purely *obiter*. In *McClure* v. *McClure*, 100 Cal. 339, [34 Pac. 822], this court quoted approvingly from Wharton on Contracts, section 533, as follows: "As has been incidentally noticed, a promise to compromise a claim utterly unfounded will not be regarded as a valid consideration. . . . It is otherwise when a suit is brought *bona fide* on probable cause; and a promise to compromise such suit is a valid consideration, even though the suit should be held to be unfounded."

But whatever may be the law as to cases involving no question of illegality, it is very clear that the rule contended for by plaintiff as to the effect of a compromise of an action can have no application where the claim involved therein was wholly based upon an unlawful, as distinguished from a merely insufficient, consideration.

There is no better-settled rule of law than the one to the effect that the courts will not entertain any action in affirmance of an illegal contract. As was said in *Hill* v. *Kidd*, 43 Cal. 615, "It is equally well settled that no action in affirmance of an illegal contract can be maintained. When parties make such contracts they must rely upon the good faith of those with whom they deal for their performance, and that failing they are denied all redress." (See note to *Chateau* v. *Singla*, 114 Cal. 91, in 55 Am. St. Rep. 66.) This universally acknowledged rule is not based upon any consideration for the party against whom the relief is sought, and who will be benefited by the refusal of the court to grant the same, but upon considerations of sound public policy. As said in *Kreamer* v. *Earl*, 91 Cal. 112, 118, [27 Pac. 735], "it is not for the sake of the party who is benefited by the intervention, but for the sake of the law itself," that a court refuses to allow the law and the machinery of the courts to be made use of for the enforcement of illegal contracts, and leaves the parties precisely where it finds them, under the rule expressed in the maxim, *Ex turpi causa non oritur actio*. It is, therefore, settled that the failure of the party against whom such relief is sought to make objection upon the ground of illegality, or the waiver of such objection by him, or even his express

consent that the court may enforce such illegal contract, will not justify a court in enforcing the same.    The illegality appearing, the court will *sua sponte* withhold all relief.    (See *Kreamer* v. *Earl*, 91 Cal. 112, 118, [27 Pac. 735] ; *Ball* v. *Putnam*, 123 Cal. 134, 140, [55 Pac. 773] ; 9 Cyc. 550.)    In *Ball* v. *Putnam* this court, after saying that there was evidence tending to show that the contract which lay at the bottom of all the transactions between the parties was a contract void as against public policy, said: ''Enough appears to call for a rigid inquiry by the trial judge, and if, after such inquiry, the evidence elicited leads him to believe that such is the fact, he will withhold all relief in this action, for a contract which is against public policy, good morals, or the express mandate of the law cannot be made the basis of ·any action, legal or equitable.    Neither the silence nor consent of the parties to it justifies the court in retaining jurisdiction of such an action.''

It would seem to necessarily be the case under this well-settled rule that no action of the parties or their assignees can so validate an illegal contract as to justify a court in enforcing it where its illegality appears.    An attempted compromise of a claim based on such a contract, whether before or after institution of action thereon, would be simply an act of the parties looking to the complete or partial ratification of the illegal contract, and which could in no way affect the power of the court to refuse to allow itself to be used as the instrument for its enforcement.    We have been unable to find any case holding that a compromise of a claim based on such a contract is supported by a legal consideration and will be enforced by the courts, and it appears to us that any such holding would be in defiance of the well-settled rule under discussion and contrary to every consideration of public policy.    It would furnish an easy method by which the parties to an illegal contract might by their mere stipulation validate the same, and make it compulsory upon the courts to thereafter enforce it, although its illegality was clearly made to appear.    This cannot be the law.    A court will not thus allow itself to be made, as has been said, ''the handmaid of iniquity.''

It was held in *Everingham* v. *Meighan*, 55 Wis. 354, [13 N. W. 269], that no compromise by the parties of differences

in respect to clearly illegal contracts and transactions can purge them and produce a valid claim. The contract there involved was a gambling contract. The case of *Reed* v. *Brewer* (Tex. Civ. App.), 36 S. W. 99, is squarely in point. The action there was upon notes given in settlement of a suit brought upon an illegal contract, and it was held that the agreement of compromise did not so change and purify the transaction as to relieve it of its vice and illegality. Quoting Bishop on Contracts, the court said: "A contract executed in consideration of a previous illegal one, or in compromise of differences growing out of it, is like that whereon it rests, illegal and incapable of being enforced." These decisions appear to us to be in accord with the rule under discussion, and, as already said, we have found no case holding to the contrary.

Under the rule which we hold applicable here, it would seem that the question as to whether Reid or the "undisclosed equitable owner," whom he testified that he represented, had actual notice of the circumstances under which the McMahon notes were given, was entirely immaterial in this controversy. Those notes, as already stated, were not negotiable, and the successors of McMahon took them subject to any objection that might be made to their validity. They stand here in the shoes of McMahon, and any answer to a claim based thereon that would have been available against him is available against them. This includes not only such defenses as might seasonably be urged by the maker of the notes, but also such objections to the enforcement of the claim on the ground of illegality as might appear to the courts when an attempt was made to enforce it. They took the notes with knowledge, conclusively imputed to them that if they were ultimately found to be based upon an illegal consideration, there could be no recovery thereon, and that the maker of the notes could not by any agreement of ratification or compromise render them or instruments given in place thereof enforceable by the courts, when their illegality should be made to appear. The defense of want of notice of the illegality of a contract is available only where the contract is a negotiable instrument in the hands of one who has acquired it for value before maturity and in the ordinary course of business. (See *Haight* v. *Joyce,* 2 Cal. 64, [56 Am. Dec. 311]; *Fuller* v. *Hutchings,* 10 Cal. 523, [70 Am. Dec. 746]; *Eames* v. *Crosier,* 101 Cal.

260, [35 Pac. 873].)  It is therefore unnecessary to determine whether the evidence shows that Reid had actual notice of the invalidity of the notes at the time they were transferred to him. It may, however, be stated that the evidence was certainly sufficient to sustain a finding that he had full notice of the claim of defendant in this regard prior to the first attempt at compromise, and that he made the compromise with knowledge imputed to him of the fact that the original notes were based on an unlawful consideration.

Under the views we have expressed, the trial court did not err in admitting the testimony objected to, and the evidence was sufficient to support the findings in so far as the same are essential to the validity of the judgment.

Complaint is made by plaintiff that the trial court failed to find upon certain affirmative defenses tendered by the answer,—viz. one of former action pending, and another of a previous order or judgment decreeing the instruments in suit to be void and of no effect. The failure to find on the issues thus tendered could not prejudicially affect plaintiff here, in view of the other findings which make it essential that judgment should go against him, even had findings been made in his favor on these issues.

The judgment and order are affirmed.

Shaw, J., Henshaw, J., Lorigan, J., McFarland, J., and Beatty, C. J., concurred.