[Civ. No. 3398. Second Appellate District, Division One.—April 9, 1921.]

## LOUIS ILFELD, Appellant, v. BURR W. PORTER, Respondent.

[1] LANDLORD AND TENANT—RETURN OF SHEEP UPON EXPIRATION OF TERM—CONSTRUCTION OF INSTRUMENT—COMPROMISE OF BONA FIDE DISPUTE—CONSIDERATION FOR CHECK.—In this action to recover on a check given to cover the loss of certain sheep upon the expiration of a lease, it reasonably may be concluded from the undisputed facts of the case that the lessee was under obligation to return to the lessor the full number of sheep received and was not entitled to account for the admitted deficiency merely by paying a certain amount per head, and at all events the facts fully sustain the contention of the lessor that the transaction which resulted in the delivery of the check was a voluntary compromise and settlement of a *bona fide* dispute and was not induced by fraud or duress.

APPEAL from a judgment of the Superior Court of Imperial County. Franklin J. Cole, Judge. Reversed.

The facts are stated in the opinion of the court.

Chas. L. Childers and Francis E. Wood for Appellant.

Clarence H. Jordan, Julia M. Braam and J. S. Larew for Respondent.

CONREY, P. J.—On the nineteenth day of November, 1914, by agreement in writing, appellant Louis Ilfeld leased to respondent Burr W. Porter and to J. E. Porter 2,500 "well-improved white ewes" for a period of four years from that date. The lessees agreed, among other things, "that they will, at the expiration, or sooner termination, of this contract, return and deliver to the party of the first part a like number of sheep of the same class of improved quality and description as hereinbefore described, of the following ages and numbers of each, as follows, to wit: six hundred and twenty five (625) ewe lambs; six hundred twenty five (625) ewes of one and one half (1½) years; six hundred twenty five (625) ewes of two and one half (2½) years; six hundred twenty five (625) ewes of three

and one half (3½) years, same to be delivered at or near the ranch of Burr W. Porter near Navajo, Arizona; that they will mark and brand all the increase of said sheep during the existence of this contract in the same mark and brand of the parties of the second part." On the first day of July of each year the lessees were to pay to the lessor as rent the sum of $1,250, with interest at the rate of eight per cent per annum from maturity if not paid when due.

It was further agreed that "the parties of the second part hereby agree and bind themselves to return and deliver to the party of the first part, between the first day of November and the nineteenth day of November, 1918, the full number of sheep herein acknowledged to be received and of like quality and ages as follows, to wit, 625 ewe lambs; 625 ewes 1½ years; 625 ewes of 2½ years; 625 ewes of 3½ years, to be of the raising of the sheep of the parties of the second part in as good condition, and with as much wool thereon, as the sheep they herein acknowledge to have received."

It was further agreed that "if the said parties of the second part shall neglect or refuse to keep or perform any of the provisions and covenants of this contract on their part to be performed then and in that event the party of the first part may at his option retake possession of all of the said sheep and the increase thereof, and declare this contract terminated; and there shall be a settlement by the parties hereto in the same manner and with the same effect as if this contract had been terminated by the expiration of its term. The title of said sheep however, to remain in the name of the party of the first part."

It was further agreed: "It is expressly agreed between the parties hereto that the said parties of the second part may have the right to sell the wool and all wether lambs, wethers and old ewes which are not fit for further breeding."

It was further agreed: "If by reason of any unavoidable accident or circumstance not due to the act or fault of the parties of the second part, they should be unable to return the entire number of sheep, or of the ages or condition above stated, then and in that event they covenant and agree to pay to the party of the first part the sum of Five Dollars per head for each sheep that shall be lacking to make up the said full number of Twenty Five Hundred as

hereinabove specified and the parties agree that the said sum of Five Dollars per head is hereby fixed upon and agreed between them as the value of said sheep in the event of their failure to return the same to the first party as herein specified and that the value of any sheep not so returned or redelivered to the first party shall be as herein specified, and shall bear interest at the rate of eight per cent per annum from the time when such delivery shall be due.''

It was further agreed: ''Said parties of the second part shall retain enough ewe lambs each year during the term of this contract out of the increase of the sheep herein acknowledged to be received, so as to be able to deliver the full number of sheep of the ages hereinbefore specified, at the termination of this contract.''

On the thirteenth day of November, 1918, respondent made and delivered to the plaintiff his check on the Holbrook State Bank of Holbrook, Arizona, drawn in favor of appellant for the sum of $1,859.63. This check was duly presented to the bank for payment, but payment was refused for the reason that respondent had directed said bank not to pay same. Appellant brought this action to recover judgment for the amount of the check with interest from its date. Answering the complaint, respondent alleged that he received no consideration for the check (except as later stated in the answer) and that the same was procured by fraud and misrepresentation on the part of the plaintiff and by reason of mistake on the part of defendant; and denied that the whole amount of said check or any part thereof remained due from the defendant to plaintiff except the sum of $51.96. The answer then set out the agreement of lease first hereinabove mentioned, and alleged:

1. That pursuant to said agreement the lessees took charge of the sheep and properly cared for them during the entire term of the agreement, and fully and faithfully performed all of the conditions of the agreement on their part.

2. That at the expiration of the term, the lessees returned to the plaintiff all of the sheep delivered to them under the agreement, together with all of the increase thereof then living, but that by reason of unavoidable circumstances not due to the act or fault of the lessees, they were unable to return the entire number of sheep received by them from

the plaintiff pursuant to said agreement at the termination thereof, 307 ewes and 304 lambs of said flock having died.

The answer further alleged that pursuant to said agreement, the defendant paid to the plaintiff the sum of $3,000 in cash and the sum of $3.04 in services in weighing sheep— a total of $3,003.04—leaving a balance due plaintiff on account of the loss of said 307 ewes and 304 lambs at $5 per head, in the sum of $51.96; that at the time the said sheep were returned to plaintiff and the said payment made, the defendant owned a flock of sheep in the same vicinity exceeding in number the aggregate of the sheep and lambs lost from the flock that had been delivered to the lessees under said agreement, said sheep so owned by defendant being of a value at least equal to that of the sheep of said flock received from the plaintiff under said agreement; that at the time of the return of said sheep to the plaintiff, as aforesaid, he represented that he had a contract to sell the ewes of said flock for the sum of $10 per head and the lambs for the sum of $5.90 per head, and thereupon plaintiff demanded of said defendant that he pay the sum of $10 per head for all of said ewes lost as aforesaid, being the further sum of $5 per head, and also that defendant pay the sum of $5.90 per head for all lambs lost as aforesaid, being the further sum of 90 cents per head, and represented to defendant that unless he acceded to said demand and paid to plaintiff the further sum of $1,859.63 the plaintiff could and would seize from defendant's said flock a number of ewes and lambs, respectively, equal to the number lost from said flock as aforesaid, and threatened so to do; that at the time defendant did not have said contract before him and was without legal advice and believed that unless he made the payment demanded by plaintiff the said plaintiff could and would carry into execution his threat to seize defendant's sheep as aforesaid, and under such belief defendant executed and delivered to plaintiff the check herein sued upon; that thereafter, on the same day that said check was executed and delivered as aforesaid, defendant examined said contract and received advice from counsel and thereupon became convinced that he did not owe plaintiff the said sum of $1,859.63, or any sum in excess of $51.96, and was under no obligation to pay the same, and defendant thereupon notified the said Holbrook

State Bank not to pay said check; that defendant admits an indebtedness to plaintiff in the sum of $51.96, said amount being included in the said check for $1,859.63 herein sued upon, and defendant hereby offers to allow plaintiff to take judgment for the said sum of $51.96 and the costs of this action heretofore accrued.

The action having been tried upon the issues thus presented, the court made findings of fact which are in agreement with the averments of the answer, and further found that the flock of sheep owned by respondent in the same vicinity were "not of the descendants of the said sheep delivered to the defendant and the said J. E. Porter by plaintiff and not *principally* of the raising of said defendant and said J. E. Porter." Judgment was rendered for the amount admitted by the answer, to wit, $51.96, with costs incurred by plaintiff up to the date of filing said answer; defendant being awarded his costs thereafter incurred. From this judgment the plaintiff appeals.

The finding to the effect that in connection with plaintiff's demand for a final payment of $1,859.63, he represented to the defendant that he could and would seize from defendant's flock the number of ewes and lambs mentioned in the findings, and threatened so to do, if construed as referring to any intended seizure without process of law, is not sustained by the evidence. The finding that the defendant did not have said agreement before him at the time when said demand was made and the check given, if construed as meaning that defendant did not have the contract in his possession or that he did not know the contents thereof, is not sustained by the evidence. Before the check was given, appellant's agent made two visits to respondent, about two weeks apart, in connection with the return of the sheep. The question concerning appellant's right to get sheep from respondent, whether raised out of the sheep delivered by appellant or out of other sheep owned by respondent, was discussed at the time of the first interview. Respondent admitted in his testimony that before the agent came the second time, he was advised that appellant was making the contention that he was entitled under the contract to sheep out of respondent's flock; that he had the contract there; that there was a dispute between them as to the construction of the contract; that he had read the con-

tract after this contention was made and was not deceived as to the language contained therein. Respondent further testified that from the representation made to him by appellant's agent that he could and would seize respondent's sheep, he understood that it would be by law. It does not appear from the evidence that there was any threat to use any force other than that incidental to process of law. Respondent admitted that in their discussion the dispute related to the construction of the contract solely on the question whether respondent had the right to return such of the descendants of appellant's sheep as he had, and pay him $5 a head for those deficient, or whether he was under obligation to supply the sheep from his other flock. The compromise which resulted in the giving of the check occurred after appellant's agent had been there two or three days and just as the sheep were being loaded on the cars. Appellant testified that while he was not entirely satisfied with the construction of the contract, he understood that he had settled the matter on the terms which resulted in his giving the check. We agree with appellant that neither the findings nor the evidence establish the fact that defendant did not have sheep of his own raising out of which he could have returned to the plaintiff the full number of sheep of the classes required by his contract. Respondent gave the following testimony:

"Q. What was the class and grade of sheep you bought from Mr. Clark? A. They were Rambouillet-Merino sheep.

"Q. Would they also be described as well-improved white ewes? A. Yes, sir, they would be classed as that.

"Q. They were free from blemish and recently dipped according to the other provisions of the contract? Those that you got from Mr. Ilfeld were quite largely also of the Rambouillet blood? A. They sheared a little more than half as much as the other sheep.

"Q. But they were apparently Rambouillet blood? A. Yes, sir, they were fair."

He further testified:

"Q. You had other sheep of your own raising, other lambs? A. Yes, sir.

"Q. You had them at the time and place of delivery, a sufficient number of sheep and of the proper ages, of your

own raising, to have complied with this contract? A. I had on the range·but not at the place of delivery.

"Q. It was near or adjacent to the place of delivery? A. Yes, sir."

The increase from both flocks were from the same bucks.

[1] From the undisputed facts of the case, which we think have now been sufficiently stated, it reasonably may be concluded that respondent was under obligation to return to appellant the full number of sheep received by him of the specified ages and classes, and was not entitled to account for the admitted deficiency merely by paying the sum of $5 per head. At all events, these facts fully sustain the contention of appellant that the transaction between the parties which resulted in the delivery of the check was a voluntary compromise and settlement of a *bona fide* dispute, and was not induced by fraud or duress. There was, therefore, a valid and binding consideration for the check.

"It cannot, of course, be successfully disputed, that the compromise of a doubtful claim asserted and maintained in good faith constitutes a sufficient consideration for a new promise, even though it may ultimately be found that the claimant could not have prevailed. This is true whether the claim be in suit or not, . . . " (*Union Collection Co.* v. *Buckman,* 150 Cal. 159, 163, [119 Am. St. Rep. 164, 11 Ann. Cas. 609, 9 L. R. A. (N. S.) 568, 88 Pac. 708].) The case here presented is wholly outside the scope of those decisions which hold that a compromise of a claim is without consideration for a new promise where the claim is wholly without foundation and known to the claimant to be so. Appellant's claim was made in good faith and on probable cause.

The judgment is reversed.

Shaw, J., and James, J., concurred.