## D. E. GRAHAM v. NOAH WILSON.

1. NON-NEGOTIABLE NOTE—*Consideration—Fraudulent Misrepresentations.* The maker of a non-negotiable note may set up and prove as a defense thereto, that such note was given for land, the sale of which was brought about by the fraudulent misrepresentations of the payee of the note; and whatever damage he shows that he has suffered by reason of such fraudulent misrepresentations will be a defense to so much of the note.

2. —— *Assignment before due—Notice—Equities.* In an action brought by the holder of a non-negotiable note assigned to him for a valuable consideration before due, the defendant may set up and prove any defense going to the consideration of the note which he would be permitted to make if the action were by the payee. Non-negotiability, like over-due paper, is notice to all that the note or instrument is subject all the time to such just defenses as the maker may have; and whoever takes such non-negotiable paper, even before due, takes it subject to all such equities.

*Error from Lyon District Court.*

NOAH WILSON brought suit against the makers upon the following non-negotiable note, to-wit:

"LEROY, JANUARY 19, 1867. :
"On or before the 25th day of December, 1867, we or either of us promise to pay to Calvin O. Robinson one hundred dollars, value received, with interest from date.                    "D. E. GRAHAM.
                    "A. McCONNELL."

The petition alleged that the said note was duly

assigned and delivered to the plaintiff, for value received, on the 8th day of July, 1867, and that the plaintiff was the lawful owner and holder thereof.

The defendants answered separately. *McConnell* pleaded a release executed by Robinson, the payee, on the 11th of April, 1867, and before any transfer or assignment of the note—and on the trial of the action final judgment was given in favor of *McConnell;* and as to him no appeal has been taken. The defendant *Graham* admitted the making of the note, but alleged that the note was given in part payment of the purchase money of 160 acres of land bought by him of Robinson, the payee of the note; " that the said Robinson, prior to said purchase and " sale, and as an inducement thereto, exhibited and " showed to this defendant a certain tract of land lying " on the west side of the Neosho river in the county of " Coffey, which the said Robinson represented to this " defendant as containing 160 acres—sixty acres of which " was first-class bottom-land, and 100 acres being first- " class upland prairie, and being, as he verily believes, of " the value of $1,000; that thereupon this defendant " agreed to purchase said land, and did pay to the said " Calvin O. Robinson in part payment upon the purchase " of said described land, in money and property, the sum " of $600, and executed to the said Robinson the said " note set out in plaintiff's petition, for the residue agreed " by this defendant to be paid for the said land so ex- " hibited and bargained to this defendant; that thereupon " the said Robinson on said 19th day of January executed " and delivered to this defendant a deed of general " warranty for the north half of the northeast quarter of " section 17, township 23, range 16, in said Coffey county, " representing to this defendant that the land so conveyed

" by and described in said deed was the land so as aforesaid " exhibited and shown to this defendant, and which this " defendant paid for as above represented; when in truth " and in fact the land so conveyed to this defendant was " not the land so shown to this defendant, or any part " thereof, and when in fact the said Calvin O. Robinson " then or there well knew that the said land so as afore- " said described in said deed was not the land so repre- " sented by him to this defendant as being the sixty acres " of Neosho bottom-land and 100 acres adjoining first- " class upland prairie, so as aforesaid exhibited and " shown to this defendant, and which he agreed to pur- " chase, and on which he paid the said $600 and executed " and delivered the aforesaid note; and this defendant, " believing said representations, did accept and put upon " record said deed, supposing it to be the land so as " aforesaid exhibited and shown to him; but he says that " the land described in and conveyed to this defendant " by said deed was in fact worth but about $200." The answer contained further averments respecting the induce-ment, misrepresentations, discovery of the fraud, etc., and alleged that by reason of the said fraudulent misrep-resentations and conduct of the said Robinson " the " defendant is damaged in the sum of $500, the necessary " amount of which he prays may be set off against the " said note, and the said defendant be awarded judgment " for costs."

The plaintiff replied to this answer. The case was tried at the December Term, 1869. The record shows that, after the jury was empanneled, "the defendant *Graham*, to maintain the issues on his part, called D. E. Graham, a competent witness, whereupon the plaintiff, *Noah Wilson*, by his attorney objected to the introduction

of any evidence under the answer of the said defendant *Graham* upon the ground that, admitting all the allegations contained in the answer of the said *Graham* to be true, they constitute no defense to the plaintiff's action—which objection on the part of the plaintiff was by the court sustained, and the evidence of the said D. E. Graham was by the court excluded; to which ruling of the court in so rejecting the said testimony, the said defendant *Graham* then and there excepted. And thereupon the said defendant *Graham*, by his attorneys, stated to the said court that he now offered to prove by the said witness, and by other competent testimony, the precise allegations contained in the answer of the said defendant *Graham;* to the introduction of said testimony the said plaintiff objected, on the same grounds as before—which objection was by the court sustained, and said testimony was by the court rejected—and to the ruling of the court in sustaining said objection and excluding said testimony the said defendant *Graham* then and there excepted." The cause was submitted to the jury, who returned a verdict for the plaintiff for the amount of the note and interest. Motion for new trial overruled, and judgment upon the verdict. *Graham* excepted, and brings the case here by petition in error.

*Ruggles & Plumb*, for plaintiff in error:

1. The note not being payable to either " order," or " bearer;" it was not "negotiable," and its transfer before due, even for a valuable consideration, cannot cut off the equities between the maker and payee.

Gräham's answer sets up fraud and misrepresentation on the part of Robinson, the payee, as an inducement for him to execute, and by reason of which he did execute it.

The case involves two questions; *first*, could the defense attempted to be made, have been allowed in an action brought by the *payee* of the note against the maker? and, *second*, if so, can it be allowed in an action brought by one to whom the note was assigned for a valuable consideration before due?

The facts set forth in the answer constitute positive fraud, in the truest sense of that term; and fraud avoids every contract, and annuls every transaction. 2 Pars. on Cont., pp. 265 to 283; 1 Story's Eq. Juris, §§ 191, 192.

It may be claimed by the defendant in error that the case comes within the old English rule, which prescribes that in all instances wherein a party shall have been injured, either by a partial failure of consideration for the contract, or by the non-fulfillment of the contract, or by breach of warranty, the person so injured could not, in an action against him upon the contract, defend himself by alleging or proving these facts, but could only obtain redress by cross-action against the party from whom the injury shall have proceeded. This is not now good law, even in England. The later decisions there have entirely modified it. See English cases quoted in *Van Buren v. Digges,* 11 How., 475; also, cases quoted in *Withers v. Greene,* 9 How., 228, *et seq.;* Sedg. on Dam., Chap. 17.

But our code especially provides that this very defense may be made in cases precisely like the one at bar: Gen. Stat. 1868, p. 648, § 94 of the code, to-wit: "The defendant may set forth in his answer as many grounds of defense, counter-claim, set-off, *and for relief*, as he may have, whether they be such as have been heretofore denominated legal, or equitable, or both." The Ohio code contains the same section, except the words "and for

relief," and it was held in *Allen v. Shackelton*, 15 Ohio St., 145, that the defense here sought to be made was complete.

·And the law does not require that there should have been an entire recision of the contract, and a tender by the ·defendant below of whatever had been received for the note upon which the action was founded. Sedg. on Dam., p. 466.

2. But can this defense be so allowed in an action brought by one to whom the payee assigned the note for a valuable consideration before due?

The note upon which the action was founded was a non-negotiable one, and the assignee of a non-negotiable note takes it subject to all the equities existing between the maker and payee: 1 Pars. on Cont., pp. 195 to 198; Edw. on Bills, 208, 209, and authorities cited. The code of civil procedure provides that "in the case of an assignment of a thing in action, the action of the assignee shall be without prejudice to any set-off or other defense now allowed; but this section shall not apply to negotiable bonds, promissory notes, or bills of exchange, transferred in good faith, and upon good consideration, before due." Gen. Stat., p. 364, § 27.

This section is almost an exact transcript of § 112 of the N. Y. Code; and the courts of that State have held, that, under said section the defendant may avail himself of any defense he might have interposed had the action been by the assignor, and which existed in favor of the defendant against such assignor at the time of the assignment: *Western Bank v. Sherwood*, 29 Barb., 383; *Beckwith v. Union Bank*, 4 Sand., 610; and affirmed, 5 Seld., 211.

"The assignee stands in exactly the same situation as the assignor." 3 Holc. Lead. Cases, 702; 18 E. Law and Eq. R., 82; 24 How., 44; 22 Barb., 110.

The same decisions have been made in Ohio upon a statute of which ours is a literal transcript: Seney's Ohio Code, p. 58, Note 15, and authorities there cited.

The defendant in error relied, in the court below, upon § 8, ch. 21, Gen. Stat., p. 183. The mere fact that a note is *non-negotiable* is "notice" to the whole world that equities exist between the original parties thereto, and puts every man upon inquiry. There can be no such thing as an "innocent holder in good faith" of a non-negotiable note.

3. But one more point remains, and it is decisive: In the pleadings below, it is nowhere alleged and nowhere denied that defendant in error *was* an "innocent holder and purchaser in good faith;" and there is no presumption attached to the transfer of the note in question, such as would be in the case of the transfer of negotiable paper. As between plaintiff in error and defendant in error, the question as to whether the defendant in error was "an innocent holder in good faith of the note in question," was not in issue in the court below.

The opinion of the court was delivered by

KINGMAN, C. J.: This was an action upon a promissory note executed by the plaintiff in error and one A. McConnell in favor of Calvin O. Robinson. The note was not made payable either to his order, or to bearer. It was assigned for a valuable consideration before due, to defendant in error, who brought the action in the court below. The defendants in the court below answered separately: McConnell relying upon a release; and upon

the trial his answer was sustained by a verdict and judgment, so that there is no question ·here. as to his liability. Graham's answer set up fraud and misrepresentation on the part of Robinson as the inducement for· Graham to make· the note, and by reason of which he did make the same. The answer not only sets up the fraud and misrepresentation generally, but enters into details, which if true, abundantly show by the facts· stated that the allegation was not too broad. The plaintiff replied, denying generally the allegations of the answer.

Upon the trial the defendant Graham offered evidence to prove the statements of his answer, which the court refused to permit him to do; and this refusal is the error alleged in this case. The defendant in error files no brief, and we are left to conjecture as to the reasons upon which the district court founded its ruling.

I. The record really presents two questions. First, could the defense attempted to be made have been allowed in an action brought by the payee of the note against the maker? and second, if so, can it be allowed in an action brought by one to whom the note was assigned for a valuable consideration before due?

We think the facts set forth in the answer constitute of themselves a good · defense to the action had it been

1. NON-NEGO-
TIABLE NOTE—
Consideration —
fraudulent mis-
representations

brought by the original payee. It is too late to revert to a doctrine found in the earlier English decisions, that where a contract was tainted with fraud it must be set aside *in toto;* or that where there was such misrepresentation as to the quality of the thing sold as greatly to impair its value the person so injured could not use such facts as a defense, but must resort ·to a cross action against the plaintiff for relief. · These rules have been greatly modified, even in England,

by later decisions where the courts " appear to have "yielded materially to the influence of common sense "and common convenience. But, however the rule laid " down in England has been understood, it has repeatedly "been decided by learned and able judges in our own " country, when acting, too, not in virtue of a statutory " license, or provision, but upon principles of justice and " convenience, and with a view of preventing litigation "and expense, that where fraud has occurred in obtain-- " ing or in the performance of contracts, or where there "has been a failure of consideration, total or partial, or a " breach of warranty, fraudulent or otherwise, all, or " any, of these facts may be relied on in defense by a " party when sued upon such contracts: and that he shall "not be driven to assert them, either for protection or as " a ground for compensation, in a cross action." *Withers v. Grecn*, 9 Howard, 230. This case cites and reviews many of the authorities upon 'this point, to which may be added, as being almost precisely similar to the case under consideration, the cases of *Hammatt v. Emerson*, 27 Maine, 323, and *Allen v. Shackelton*, 15 Ohio St., 147. This last case places the decision briefly on the ground that it is authorized by the code in a section corresponding with section 9 ; of the code of this State. The law on this point ougl t to be considered settled.

II. The second question remains to be answered. Can this defense be allowed in an action brought by one to 2.—Assigne- of non-negotiable note, before due takes it subject to all equities. whom the payee assigned the note for a valuab ꞓ consideration before due? It will not be questioned that unless some statutory provision shall prohibit such a defense that it would be available; for it has always been the established doctrine that the assignee of a non-negotiable note, takes it sub-

32

ject to all the equities existing between the maker and the payee. 1 Pars. on Cont., 195, 198 ; Edw. on Bills, 208, 209. "Nor will it be questioned that the note sued on is a non-negotiable note. Gen. Stat., ch. 14, § 1, p. 114; Story on Prom. Notes, § 128.

Have our statutes made any change in this respect? The difficulty, whatever there is, on this point, arises from the fact that the same legislature has enacted a law bearing upon or controlling the subject, in three different chapters, and under as many headings : see Gen. Stat., §§ 2 and 3 p. 114; § 8, p. 183, and § 27 of the code, p. 635. These several sections referring to the same subject should be construed together, and the intent of the legislature drawn from them all if possible. Section 27 of the code of civil procedure is too familiar to need quotation here. It establishes a rule as to non-negotiable paper that would admit the defense set up in this case as against the holder of the note though it was assigned to him for a valuable consideration before due. The reason of the section is apparent. If a man chooses to give a commercial character to his paper he may do so by making it negotiable, and if it passes into the hands of a holder for a valuable consideration before due, he shall not be allowed to raise questions affecting the value of the paper which he has allowed to go into circulation; but if the holder of the note has taken the assignment thereof after maturity he has implied notice by the non-payment, that there is some defense or latent equity against the note, and he takes it subject to such possibilities. So, if the note is non-negotiable; this very fact is a notice to him, and he takes the note at his peril. There is no difficulty in construing this section; and when we consider the reasons for its enactment, there will be little trouble in under-

standing section eight, pp. 183, 184. That section is as follows:

"SEC. 8.—The want or failure in the whole or in part of the consideration of a written contract may be shown as a defense, total or partial as the case may be, in an action on such contract brought by one who is not an innocent holder in good faith."

Is the holder of a non-negotiable note ever an "innocent holder" in the sense in which that term is known to the law? We think not. The maker of such a note has taken care, in making the note, to so limit his liability, as to challenge the attention of and give notice to all that it is made subject all the time to such just defenses as he may have, or to such latent equities as may exist; and any person taking such a note by assignment is put upon his guard to make inquiries of the maker as to the existence of any grounds of legal defense he may have. If this section can have any other meaning, then the distinction made in section 27 of the code between negotiable and non-negotiable paper has no effect; and yet the code was adopted after section 8 above quoted. The construction we have given this section makes our statutes harmonious and consistent each with the other, and ought to prevail. Consequently the decision of the court below in refusing to permit evidence of the defense to be given was erroneous.

The judgment must be reversed and a new trial awarded.

All the Justices concurring.