## COBB *v.* PRELL.

*(Circuit Court, D. Kansas.    January, 1883.)*

1. OPTION CONTRACTS—INTENTION OF PARTIES.
   When it is the intention of the parties to contracts for the sale of commodities that there shall be no delivery thereof, but that the transactions shall be adjusted and settled by the payment of differences, such contracts are void.

2. SAME—BURDEN OF PROOF.
   It is the duty of the courts to scrutinize very closely contracts for future delivery; and if the circumstances are such as to throw doubt upon the question of the intention of the parties it is not too much to require a party claiming rights under such a contract to show affirmatively that it was made with actual view to the delivery and receipt of the commodity.

3. SAME—CONTRACTS HELD VOID.

 As the evidence in this case establishes the fact that the parties did not intend the actual delivery of the corn contracted for, but did intend to speculate upon the future market and to settle the profit or loss of defendant upon the basis of the prices of grain on the third of May, 1881, as compared with the prices at which defendant contracted to sell, the contracts sued upon are void, and plaintiff cannot recover.

At Law.

*Everest & Waggener,* for plaintiff.

*J. R. Hallowell* and *J. T. McCleverty,* for defendant.

McCRARY, J. In this case a jury was waived and the cause was tried by the court. It is an action at law in which the plaintiff claims damages for breach of contract. The complaint alleges that during the months of February, March, and April, 1881, the defendant, who is a grain dealer residing at Columbus, Kansas, authorized the plaintiff, who is a commission merchant at St. Louis, Missouri, to sell for him certain quantities of corn to be delivered to the party or parties to whom the plaintiff might sell the same, at the option of defendant, during the month of May, 1881. The complaint further alleges that the plaintiff contracted for the sale of said corn to be delivered during said month of May; but that defendant, failing to deliver said corn, the plaintiff having contracted to sell the same in his own name, was obliged to and did pay the damages resulting from such failure, to-wit: the difference between the price of corn at the place of delivery on the thirty-first day of May and the price at which defendant had agreed to sell and deliver the same, amounting in the aggregate to $2,945.25, for which, with interest, he prays judgment.

The answer alleges that the contracts set out in the complaint were option or marginal contracts, and that said plaintiff well knew them to be such, and so made the contracts of sale of said corn, not expecting to receive of the defendant any portion of the amounts of corn for delivery, but expecting to pay any losses or receive any gains that might accrue for or against said defendant; that said contracts were made for the purpose of speculating on the rise and fall of prices, the plaintiff to receive commissions for said transactions; and that said contracts were mere wagers on the fluctuating of the prices of grain in the market of the city of St. Louis.

The case therefore turns upon the questions, whether or not it was the intention of the parties that the corn should be delivered. If such was the *bona fide* intention, then the plaintiff is entitled to recover; but if, on the other hand, it was understood that the defendant

was not required to deliver the corn, and that the transactions should be adjusted and settled by the payment of differences, then the contracts were void and the plaintiff cannot recover. Upon this controlling element in the case, as might reasonably be expected, the testimony of the plaintiff and defendant is in conflict. Under such circumstances we are obliged to determine the controversy by reference to the actions of the parties in connection with the transactions and their contemporaneous declarations, especially those in writing, having a bearing upon the subject. If we can learn from these what interpretation the parties themselves have put upon their own contract, we shall find a satisfactory guide in determining the case.

The evidence satisfactorily shows that the plaintiff was largely engaged at and about the time of these transactions in dealing in options. He was also largely engaged in buying and selling grain for actual delivery. It appears that he adopted and had in use two blank forms upon which statements of account were rendered to his dealers, one of which was used when the grain was actually delivered, and the other when it was not delivered, and the settlement was made upon the basis of the differences. In the former statement, as might be expected, we find charges for freight, inspection, insurance, weighing, storage, and commissions. These are charges which necessarily entered into the transaction where the grain was shipped and delivered. In the latter statements these items do not appear. They show only the number of bushels of grain bought, the price at which bought, and the month of delivery; the price at which the same was sold, and the net loss or gain. There are in evidence 34 of these last-named bills, used in the settlement of option deals between June 26, 1881, and July 30, 1881, all representing transactions between plaintiff and defendant. Of the bills representing actual sales from the defendant to plaintiff between September 18, 1880, and April 19, 1881, there are 57; so that it appears that the course of dealing between the plaintiff and defendant was such that sometimes the grain contracted for was to be delivered, and at other times it was not to be delivered, and the transactions were to be settled upon the basis of margins. It only remains to be determined whether the transactions in controversy belong to the former or to the latter class. If the question were to be determined upon the testimony of the parties themselves, conflicting as it is, in connection with the facts already stated, it would probably depend upon the question: upon which party rests the burden of proof? And I am inclined to the opinion that, without reference to other evidence, the plaintiff would fail.

It is the duty of the courts to scrutinize very closely these time contracts, and if the circumstances are such as to throw doubt upon the question of the intention of the parties, it is not too much to require a party claiming rights under such a contract to show affirmatively that it was made with actual view to delivery and receipt of the grain. *Barnard* v. *Backhaus*, 9 N. W. Rep. 595.

It appearing that the parties were in the habit of dealing in options, and the evidence being equally balanced upon the question whether these were option contracts or not, the court would be obliged, I think, to say that the plaintiff has failed to' make out his case by a preponderance of evidence. But whether this be so or not, a reference to the written evidence, to be found in the correspondence of the parties at and near the time of the transaction, strongly corroborates the defendant. A number of letters, written about the time of these transactions, and evidently referring to them, are in evidence, and an examination of them will show that the plaintiff was constantly insisting, not upon the shipment of the quantity of corn purchased by him, but upon the payment of margins, either in cash or by the shipment of enough corn to cover margins. February 11th, plaintiff writes to defendant, referring to the transactions between the parties as "option deals." April 22d, he writes, "We had to put up over $2,000 on your deals," etc. May 2d, he says, "You must ship us some corn as a margin." May 7th, he says, "If you can't ship us any corn to cover margins, please send us $500." May 18th, he writes, "We draw $500 on you. This is margins for your corn deals, which we hope you will pay. This will leave you about $300 behind to make corn deals up to market." May 27th, he says, "We have written you and drawn on you for margins."

Perhaps the most significant letters bearing upon this question are those of May 30th and 31st, the dates on which the time for the delivery of the corn expired. If it was a *bona fide* transaction, and plaintiff was expecting the delivery of the corn, we should expect to hear him, in these letters, complaining or expressing surprise that the time was about expired and the corn had not been delivered. But, on the contrary, a reference to the letters of those dates will show that the only complaint was that defendant had not furnished the margins. Thus, on May 30th, plaintiff writes, "We cannot carry these deals when you not only refuse to give us margins, but seem to pay no attention to our demands." On the 31st plaintiff writes to explain the manner in which he had closed out the May corn, and expressing regret at the serious loss to the defendant, but says noth-

ing to indicate that he expected the corn to be shipped. Upon all of the evidence, I am of the opinion, and therefore find the fact to be, that the parties did not intend the actual delivery of the corn contracted for, but did intend to speculate upon the future market, and to settle the profit or loss of the defendant upon the basis of the prices of the grain on the thirty-first of May, 1881, as compared with the price at which defendant contracted to sell. Such being the fact, the law is well settled that the plaintiff cannot recover. *Melchert* v. *Am. Un. Tel. Co.* 11 FED. REP. 193; *Gregory* v. *Wendell*, 39 Mich. 337; *Pickering* v. *Cease*, 79 Ill. 328; *Barnard* v. *Backhaus, supra.*

Judgment for defendant.