W. E. HUTCHINS, *Appellant,* v. L. STANLEY, *Appellee.*

No. 17,944.

SYLLABUS BY THE COURT.

NONNEGOTIABLE NOTE — *Illegal   Consideration* — *Margins   on   Board of Trade.*  A nonnegotiable promissory note was given to cover margins in a board of trade transaction or speculation in the price of wheat, no actual sale or delivery being intended.  The instrument was indorsed before maturity for full value to the appellant, who took it without notice of the consideration.  At maturity the appellant was informed of the consideration, and accepted a new negotiable note for the principal, the interest being paid.  In this action upon the new note, *held:*  (1) The note was given in a gambling transaction prohibited by law (Gen. Stat. 1909, § 5169) and was void between the parties.  (2) The assignee of a nonnegotiable instrument stands in the shoes of the payee.  A defense available against the payee is also available against the assignee.  (3) The new note taken in exchange for the old one is a renewal of the former obligation.  (4) The payee of the new note is chargeable with notice of the infirmity in the original instrument because of his knowledge of the consideration, as well as from its nonnegotiable form.  (5) The consideration of the new note is the obligation of the old one. This consideration being illegal, a recovery can not be allowed.

Appeal from Lyon district court.   Opinion filed February 8, 1913.   Affirmed.

*Gilbert H. Frith, J. Harvey Frith,* and *L. B. Kellogg,* all of Emporia, for the appellant.

*O. S. Samuel,* of Emporia, for the appellee.

The opinion of the court was delivered by

BENSON, J.:  This action is upon a promissory note made by the appellee to the order of the appellant. The defense is based upon the following facts:  The appellee gave to the Kemper Grain Company his nonnegotiable promissory note, the words "to order or to bearer" not being contained in the instrument.  (Neg. Inst. Law, § 8, Gen. Stat. 1909, § 5254.)  This instru-

ment was given to cover margins in a board of trade transaction or speculation in the price of wheat, no actual sale or delivery having been contemplated. The instrument was transferred by indorsement without recourse to the appellant before maturity for full value, who took it without knowledge of its consideration or of the transaction in which it was given. At maturity the appellee told the appellant that he had lost the money and had given the note to settle for margins in a board of trade transaction, paid the accrued interest, and gave the note sued upon for the principal sum; thereupon the old instrument was surrendered to him.

The deal out of which the original instrument arose was in violation of section 5169 of the General Statutes of 1909. Having been given in a gambling transaction in violation of law, it was void between the parties because of illegality of consideration. (*The State v. Wilson*, 73 Kan. 334, 343, 80 Pac. 639, 84 Pac. 737; 1 Randolph on Commercial Paper, 2d ed., §§ 515, 517; 1 Parsons on Notes & Bills, p. 212.)

Whether a negotiable promissory note given for such consideration is void in the hands of a *bona fide* holder for value is a question upon which the decisions are in conflict. The annotator in 119 Am. St. Rep., at page 176, declares that there is a hopeless conflict on this question, and supports his declaration by a multitude of citations. This question, however, is not involved here, for the instrument was not negotiable and the transferee was not entitled to the protection given to the holder of negotiable instruments in due course. Neither is the action upon that obligation.

It is a general rule that a renewal between the parties of a note void for illegality of consideration is likewise void. (3 Randolph on Commercial Paper, 2d ed., § 1584; Bishop on Contracts, 2d enlarged ed., § 488.) Many decisions support this rule, but the new

note here was not given to the payee of the old one, but to his indorsee, and it is contended that the general rule is inapplicable to this situation. The argument of the appellant is that the new note should be treated as a payment and not as a renewal. This is not the effect of giving a new note unless it is so intended or agreed, and there is nothing in the evidence to show that it was received otherwise than in the usual way in renewal of the former obligation. (2 Daniel on Negotiable Instruments, 5th ed., §§ 1266, 1266a; 3 Randolph on Commercial Paper, 2d ed., § 1571.)·

While the cases are numerous in which the effect of renewals between the parties of notes tainted by illegality of consideration are considered, not so many have been found involving renewals given to an indorsee or assignee. In Missouri, where the note of a married woman given for a worthless patent right was invalid because of her coverture, it was held to be void in the hands of an indorsee, and that a new note given to the indorsee in renewal, to which her want of ability did not attach, was also void. The court said:

"The original note being void because of the inability of the payor, Mrs. Leedy, to make a contract of this kind on account of her coverture, it was void in the hands of plaintiff as indorsee even without notice of the fact that it was obtained by fraud, and was without consideration; and, although the last note was given in renewal of the first, there was no consideration therefor, and it was subject to the same defenses as was the original note. (*Comings v. Leedy*, 114 Mo. 454, 478, 21 S. W. 804.)

In California, in an action upon a promissory note made in renewal to the assignee of a nonnegotiable instrument which had been given in consideration of a gambling debt and indorsed to the payee of the note sued upon, it was held that an assignee of such an instrument is in no better position than the payee, and

that notes given in renewal are of no more validity than the original obligation. It was also held that although the renewal notes in that case were given in compromise of a suit pending upon the old note, they were still tainted with the illegality of that instrument and payment could not be enforced. It is true that it was alleged that the assignment was only colorable and that the assignee to whom the renewals had been executed was only an agent of the first payee. This feature of the case was not, however, deemed important. It was said in the opinion:

"Under the rule which we hold applicable here, it would seem that the question as to whether Reid (payee of the renewal notes) or the 'undisclosed equitable owner,' whom he testified that he represented, had actual notice of the circumstances under which the McMahon notes were given, was entirely immaterial in this controversy. Those notes, as already stated, were not negotiable, and the successors of McMahon took them subject to any objection that might be made to their validity. They stand here in the shoes of McMahon, and any answer to a claim based thereon that would have been available against him is available against them. This includes not only such defenses as might seasonably be urged by the maker of the notes, but also such objections to the enforcement of the claim on the ground of illegality as might appear to the courts when an attempt was made to enforce it. They took the notes with knowledge, conclusively imputed to them, that if they were ultimately found to be based upon an illegal consideration, there could be no recovery thereon, and that the maker of the notes could not by any agreement of ratification or compromise render them or instruments given in place thereof enforceable by the courts, when their illegality should be made to appear. The defense of want of notice of the illegality of a contract is available only where the contract is a negotiable instrument in the hands of one who has acquired it for value before maturity and in the ordinary course of business. . . . It is therefore unnecessary to determine whether the evidence shows that Reid had actual

notice of the invalidity of the notes at the time they were transferred to him." (*Union Collection Co. v. Buckman,* 150 Cal. 159, 166, 167, 88 Pac. 708, 119 Am. St. Rep. 164, 171, 9 L. R. A., n. s., 568, 11 A. & E. Ann. Cas. 609.)

Elsewhere in the same opinion it was said:

"That a court refuses to allow the law and the machinery of the courts to be made use of for the enforcement of illegal contracts, and leaves the parties precisely where it finds them, under the rule expressed in the maxim, '*Ex turpi causa non oritur actio.*' It is, therefore, settled that the failure of the party against whom such relief is sought to make objection upon the ground of illegality, or the waiver of such objection by him, or even his express consent that the court may enforce such illegal contract, will not justify a court in enforcing the same." (p. 164.)

The assignee of a nonnegotiable instrument stands in the shoes of the payee. A defense available against the payee is also available against him. (*Graham v. Wilson,* 6 Kan. 489.) It should also be observed that when the appellant took the note upon which he sues, he was told that the original instrument had been given in settlement of margins in a board of trade transaction.

In *Mason v. Jordan,* 13 R. I. 193, it was held that a note given in substitution or novation of another note which had been made without consideration is also without consideration. In that case a married woman had conveyed realty as a *feme sole,* which it was held that she could not legally do in the circumstances shown. Her grantee made a conveyance of the property to another. Thereupon the woman referred to canceled a note and mortgage which she had taken in consideration of her deed and by substitution or novation took the note and mortgage of the last grantee. The court held that the deed of the married woman was a nullity and the notes taken therefor were without consideration; that the grantees having received noth-

ing had nothing to convey, and consequently the second note was also without consideration. It was said:

"It follows if the original note and promise were both without consideration, that the new note into which they were transmuted by novation was likewise without consideration." (p. 194.)

A note given for an illegal consideration in furtherance of transactions prohibited by statute, and in fact declared to be felonious, is certainly no better than one given without any consideration, and unless the payment made to the Kemper Grain Company should be treated as the consideration, the appellant can not recover. It is believed that the true consideration for the new note is the old obligation. To hold otherwise would seem to give to the nonnegotiable instrument the quality of negotiability, excluding a defense good against the payee. However, decisions bearing upon that question will now be considered. In a case in North Carolina it appeared that a negotiable note had been given for money won at cards. It was indorsed to a holder for value before maturity, without notice of the consideration. In a suit by the indorsee the court said:

"A note to secure the payment of money won at cards, is void by statute. Although the note be passed by indorsement, for valuable consideration, and without notice to the indorsee, it is void in his hands. So, if the maker executes a second note to the *original payee*, either in renewal of the first note simply, or including another debt, the second note is void; for it is to secure the payment of money won at cards, and the taint in the part of the consideration vitiates the whole—'a rotten egg.' *Palmer v. Giles*, 5 Jon. Eq. 75.

"In our case the maker executed the second note *to Calvert*, who was the indorsee for valuable consideration, and without notice. This second note was given to secure the price paid by Calvert for the first note, and not to secure the payment of the money which Christmas had won, for the purpose of making it

Hutchins v. Stanley.

must be referred to the proximate, and not the remote cause. The consideration, therefore, is not tainted by the illegality which vitiated the first note." (*Calvert v. Williams,* 64 N. C. 168.)

The all-important distinction between that case and this is that the first note was negotiable. The indorsee having the right to enforce payment, would have the same right with respect to a renewal note.

In *Burton v. Stewart,* (N. Y. Supr. Ct.) 62 Barb. 194, a negotiable note given to the president of a corporation for an illegal consideration was held to be enforceable by a bank which had discounted it before maturity, without notice of the infirmity, and it was also held that another note given to the bank in renewal was a valid obligation against the maker. It was said, however, that if the president of the corporation, payee in the first note, had taken it up at maturity he could not have recovered upon it, for he would have held it clothed with the same rights existing at the time of the transfer. It will be seen that the renewal note in the case last cited was held valid because the original note was negotiable and was taken in due course.

In a case in Kentucky the subject was considered from a somewhat different point of view. Several notes had been given for lottery tickets—an illegal consideration. They were assigned, and the maker, having obtained forbearance for some time from the assignee, made a new note for the amount of the old ones to a creditor of the assignee, and thereupon the assignee was given corresponding credit on his indebtedness to the new payee. The new note was held valid, on the ground that the maker could waive the illegality, and had done so by giving the renewal note. The court said:

"Whatever illegality there may have been in the lottery, or fraud in the management and drawing thereof, and however availing the illegality and fraud may have been when urged by Olds in vacation of the notes,

of which the tickets were the consideration; yet it was competent for him to waive the illegality and fraud, and affirm them. This, we think, he has done in a very effectual manner, for it is not pretended that Levin Shreves did not pay a fair and full consideration for them; his claim to this amount was honest, and could have been enforced against the assignor, upon his failure to receive it in the exercise of vigilant pursuit, from the obligor. But the obligor, with a full consciousness of his *legal* exemption from the payment, promises the assignee payment, and by repeated promises of payment obtains repeated forbearance, and at length takes up the four notes, and executes to the creditors of the assignee his note for their aggregate amount, whereby the assignee obtains a credit with them for that amount. This, we think, is a strong practical waiver by Olds, of whatever of fraud and illegality there may have been in the original transaction." (*William Shreves et al. v. William Olds*, [Ky.] 2 A. K. Marshall, * 141.)

The proposition that illegality of consideration is waived by a renewal made to the same party, or to another with notice of the taint, is opposed to the weight of authority. Randolph says:

"The consideration which belongs to the original paper belongs to a renewal also. This is true also of a note given by the maker of the original note, with its payee as surety, to a subsequent holder of such note, in renewal of it." (1 Randolph on Commercial Paper, 2d ed., § 460.)

"The principle is that where the original promise is tainted with illegality the taint can not be removed by a new promise based on the old one." (Note, 9 L. R. A., n. s., 568.)

A contract made for the purpose of giving effect to an agreement void because opposed to public policy is also void unless the contract be negotiable, and in the hands of a *bona fide* holder for value before maturity, without notice of its character. (Greenhood on Public Policy, rule 10, p. 8.)

In an action by the holder of a note made to an in-

dorsee of another note which had been given by the same maker for an illegal consideration, it was held that:

"The same defense, which the defendant might have made to an action by an indorsee of the note originally given by him, may be made by him in this action on the note given in renewal of the original note. Both notes were given for the same unlawful consideration." (*Holden v. Cosgrove,* 78 Mass. 216, 217.)

It has been held that the compromise of an entirely unfounded claim is not of itself a valid consideration for a new promise to pay it. (*Creutz v. Heil, &c.,* 89 Ky. 429.)

It was said in *Pitkin v. Noyes,* 48 N. H. 294, that:

"The surrender or discharge of a claim, which is utterly without foundation, and known to be so, is not a good consideration for a promise; . . . but it is otherwise if the claims are doubtful and so understood by the parties, and in such a case the consideration will not be defeated by showing that in fact no valid claim really existed." (p. 304.)

This appears to be the general rule. (Wharton on Contracts, § 533.)

This principle applies with greater force where the claim compromised is based upon an unlawful as distinguished from a merely insufficient consideration. (*Union Collection Co. v. Buckman,* 150 Cal. 159, 88 Pac. 708, 119 Am. St. Rep. 164, 9 L. R. A., n. s., 568, 11 A. & E. Ann. Cas. 609; *Reed v. Brewer,* [Tex. Civ. App. 1896] 36 S. W. 99.)

Where a note given in consideration of the sale of a stock of intoxicating liquors had been surrendered, and a new note had been taken from a firm to whom the stock had been transferred and an action was brought and goods attached upon the new note, it was held that the consideration of the first note was illegal and that this infirmity affected the new note, both having been taken with notice of the illegality. It was also held that a compromise of the suit whereby the attachment

was released upon promise to pay the note was not a sufficient consideration. The court said:

"The original notes of Blake and Caldwell, as between the parties to them, had no legal validity or value, *Fuller v. Bean*, 30 N. H. 186, *Bliss v. Brainard*, 41 N. H. 261, *Perkins v. Cummings*, 2 Gray, 258, *Gray v. Hook*, 4 Comst. 449, (and see *Viser v. Bertrand*, 14 Ark. 267, 15 U. S. D. 19, sec. 90,) and would have been equally valueless in the hands of an indorsee with notice. Chitty on Bills, *95. It would seem somewhat strange if the surrender of such notes by one, in whose hands they were void, to the maker or another, in whose hands they would be equally invalid, could furnish a sufficient consideration for a note by either of the latter to the former; . . . we think that the trouble of the surrender can not, in a case like this, be held a sufficient consideration for the notes given by Blake & Wilkins, for if either of these latter propositions were true, there would be a sufficient consideration for the renewal of the notes between the original parties. The surrender, forbearance or assignment of a claim having no legal validity is not a sufficient consideration for a promise. . . . The abandonment of legal proceedings commenced where there is palpably no cause of action, is not a good consideration for a promise." (*Kidder v. Blake*, 45 N. H. 530, 532, 533.)

The appellant had already paid his money to the Kemper Grain Company when he took the new note. He parted with nothing nor did the appellee receive anything in consideration for it. It was a mere substitution of one promise for another, both resting upon the same illegal consideration, of which the appellant had actual notice as well as notice afforded by the form of the original instrument. (*Graham v. Wilson*, 6 Kan. 489.) The renewal is not free from the infirmity of the original instrument. The poison of illegality remains in the new note, for it is a continuation of the former.

An observation of the supreme court of Texas is deemed applicable here:

"If a note is tainted by the consideration of the de-

mand for which it is given, there can be no good reason for drawing the line at the first note. If the first is taken up and a new one given in its stead, to obtain an extension of time, to embrace in it additional demands, or for other purposes, the illegal consideration is as distinctly traced in the second note as in the first. The new considerations dilute but do not neutralize or extinguish the poison." (*Wegner Bros. v. Biering & Co.,* 65 Tex. 506, 510.)

The appellant cites *Calvin v. Sterritt,* 41 Kan. 215, 21 Pac. 103, in support of his contention that the new note is valid. The result in that case, it will be seen, depended on a question of fact. It was said, however, in the opinion:

"The general rule, as laid down in the text by Daniel in his work on Negotiable Instruments, is, that if the consideration of the original note be illegal, a renewal of it will be open to the same objection and defense (p. 163, § 163); but if at the time the renewal was executed the parties signing knew of the fraud in the original, they will be regarded as purging the contract of fraud, and can not then plead it." (p. 219.)

The latter part of the above quotation is set out in appellant's brief. It will be observed that the court referred first to illegal considerations, and said that renewals in such cases would be open to the same defense, and then referred to cases of fraud which might be purged from a contract by renewal made with knowledge of the fact. This distinction is clearly stated by the author referred to in the opinion:

"If the consideration of the original bill or note be illegal, a renewal of it will be open to the same objection and defense; and if the original instrument was obtained by fraud, a renewal of it by the original parties without knowledge of the fraud would stand upon the same footing. But if at the time the renewal was executed the parties signing knew of the fraud in the original, they will be regarded as purging the contract of the fraud, and can not then plead it." (1 Daniel on Negotiable Instruments, 5th ed., § 205.)

It will be seen that the opinion in the Calvin case merely undertook to briefly state propositions contained in the treatise referred to, which are not in conflict with but which support the conclusion that where a renewal note is taken with notice of the illegal consideration of the original instrument, it is tainted with the same illegality and payment will not be enforced.

The judgment is affirmed.

MASON, J. (concurring specially) : I concur in the affirmance of the judgment of the district court, but do so specifically upon the ground that Hutchins knew when he accepted the promissory note sued upon that the original transaction was illegal. · If Stanley had given his note, payable in the future, without making known the illegality back of it, I think he would be precluded from making a defense based thereon, for in that case Hutchins would have been misled to his prejudice, because his ignorance of the facts, and Stanley's silence would have lulled him into security and delayed such steps against the grain company as with full knowledge he might have desired to take at once.