No. 19,073.

THE ORTHWEIN-MATCHETTE INVESTMENT COMPANY, *Appellant,* v. T. E. McFARLIN, Doing Business as THE MIDLAND GRAIN AND COAL COMPANY, *Appellee.*

SYLLABUS BY THE COURT.

1. GAMBLING CONTRACTS—*Transactions Prohibited by the Statute.* Sections 5168 and 5169 of the General Statutes of 1909, declaring parties to certain transactions guilty of a felony, were not intended to prevent contracts for future delivery of commodities when entered into in good faith and with an actual intention of fulfillment; its purpose was to suppress mere speculation where the commodity dealt in exists only in imagination, where no delivery is contemplated, but where, on the contrary, it is expected that the parties will settle upon the difference in the speculative market.

2. SAME—*Petition—Gambling Contracts Set Forth.* The transactions declared upon in the petition in this case as a basis for the several causes of action are held to be gambling contracts in direct violation of the statute.

3. SAME—*No Recovery by Broker for Services in Promoting Gambling Contracts.* A broker or commission merchant who knowingly participates in his principal's unlawful intent in a speculative transaction in direct violation of the statute can not recover for his services, nor for losses incurred, nor for advances made by him in behalf of his principal in carrying out such illegal transaction.

Appeal from Cloud district court; JOHN C. HOGIN, judge. Opinion filed December 12, 1914. Affirmed.

*A. S. Wilmoth,* of Concordia, and *Edmond C. Fletcher,* of Kansas City, Mo., for the appellant.

*S. D. Bishop,* of Lawrence, *Park B. Pulsifer,* and *Charles L. Hunt,* both of Concordia, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The action in the district court was to recover a broker's commissions and margins for the purchase and sale on the defendant's account of grain on the board of trade of Kansas City, Mo., and Chicago, Ill. The court sustained a demurrer to the petition, and rendered judgment against the plaintiff for costs, from which the plaintiff has appealed.

Twelve separate causes of action are set out in the petition, each based upon a similar transaction, and the facts pleaded are substantially the same. In one count it is alleged that on the 27th day of June, 1912, the plaintiff as broker sold for defendant on the board of trade of Chicago, 20,000 bushels of oats for delivery in December, and on the same day purchased for defendant the same quantity of oats of like quality for delivery in December, but at a different price; and that this purchase was made for the sole purpose of counteracting the previous sale made for defendant. It is alleged that by this sale and purchase defendant sustained a loss of one-half cent a bushel by reason of the fluctuation of the market price of the product, which loss the plaintiff claims to have paid, and by reason

thereof defendant is indebted to the plaintiff in that sum, and also for a broker's commission.

It appears from the petition that the various transactions all occurred between the 24th and 27th days of June, 1912. During these three days it is claimed that plaintiff bought and sold for the defendant 340,000 bushels of grain, consisting of wheat, corn and oats, all for future delivery; that on one day, June 27, it sold on the board of trade of Chicago, for the defendant, 90,000 bushels of grain for December delivery, and in order to counteract these sales it made counter purchases of the same amount of grain and of the same quality for defendant's account, all for delivery in the following December. The commissions and losses which the plaintiff seeks to recover amount to about $2300. It also appears that in practically every instance the counter purchases were made on the same day the sales were made, and were always for the same amount and quality of grain that defendant had purchased, and that these purchases were made in order to avoid delivery. Moreover, the sale was always made to one person or firm and the purchase from another person or firm who was a stranger to the original contract. Each count alleges that plaintiff sold for defendant a certain amount of grain on the board of trade, either at Chicago or Kansas City, Mo., to one individual or company, to be delivered at a future date, followed by the allegation that for the purpose of closing out the transaction it purchased on the same day the same amount of grain from another individual, to be delivered at the same time and place. There is no averment in the petition that it was ever the intention of the parties to deliver the grain. It is apparent from the statement of facts that such was not the intention.

In sustaining the demurrer the trial court held the various transactions to be gambling contracts. Plaintiff concedes that under the common law and the statutes of this state a contract of sale or purchase of grain

or other commodities for future delivery is void where it appears that it was not intended that the goods should be delivered, but makes the contention that in any event the question whether these transactions were gambling contracts is a question of fact for a jury to determine, if such is alleged as a defense in an answer, but that a defense of this nature can not be raised by a demurrer to the petition. In 14 A. & E. Encyc. of L. 618, it is said:

"The real test whether the ostensible contract is or is not a gambling contract is a question of fact, and if the evidence is conflicting it is for the jury, under proper instructions from the court, to determine.

"The burden of proof in actions on these contracts is upon the party alleging that the transaction is illegal, and a gambling contract."

In Wisconsin the burden of proof has been held to rest upon the party claiming that the contract is lawful and valid, upon the theory that such contracts are usually made the cloak for gambling. (*Barnard v. Backhaus, imp.*, 52 Wis. 593, followed in *Cobb v. Prell,* 15 Fed. 774. See, also, *The First National Bank of Lyons v. The Oskaloosa Packing Co.,* 66 Iowa, 41, 23 N. W. 255.) The plaintiff relies to some extent upon the case of *Washer v. Bond,* 40 Kan. 84, 19 Pac. 323, where it was held that the question whether a grain deal is a gambling contract is to be determined by the jury under proper instructions; but that was a case where suit was brought upon a note and the defense was that the note, while not disclosing the consideration, was in fact given as part of a transaction involving an optional deal in grain. The case is not in point, because, as there held, the note itself imported a consideration, and the defense of a failure of consideration depended upon the intention of the parties as disclosed by the evidence.

Our statute was not intended to prevent contracts for future delivery of commodities when entered into

34—93 KAN.

in good faith and with an actual intention of fulfillment; its purpose was to suppress mere speculation where the commodity dealt in exists only in imagination, where no delivery is contemplated, but where, on the contrary, it is expected that the parties will settle upon the difference in the speculative market. The statute (Gen. Stat. 1909, §§ 5168, 5169) makes such a transaction a felony. It applies to those transactions wherein the parties "do not contemplate or intend the actual or *bona fide* receipt or delivery of such property, but do contemplate or intend a settlement thereof based upon differences in the price at which said property is or is claimed to be bought and sold." (§ 5168.)

In our view of the case the demurrer was rightly sustained. Courts will take judicial notice of what every one acquainted with a subject knows; and certainly this includes the methods by which business is usually transacted on the Chicago board of trade and other exchanges in buying and selling grain and other products for future delivery. Conceding for the purpose of the argument that such contracts may be lawful, and that the contracts themselves may be sold and transferred to others without the transaction becoming void or obnoxious to the law, and that there may also be transactions where a sale is set off by a purchase of the same commodity and the account between the parties settled by a payment of the difference in the market price on the day of delivery, where it was the original intention of the parties to the transaction that the commodity should be delivered, still we think the facts recited in the petition show that the transactions were nothing more than gambling contracts. The whole transaction in each instance shows that there was no intention that the grain should be actually delivered. The language of the petition shows that the purchase of grain was made for the sole purpose of avoiding delivery of the grain pretended to have been sold. In most instances it was made on the same day that the sale was made and obviously because of the fluctuation

Investment Co. v. McFarlin.

in the speculative price of that grain for December de-
livery. The loss which it is alleged the defendant
sustained was the difference in each case between the
market price when he sold and the market price when
he purchased for the purpose of counteracting the sale.

Whatever the intention of the parties was it must
have been known to the plaintiff. If the defendant
when he sold on the board of trade at Chicago 20,000
bushels of oats to John Smith for December delivery
entered into a *bona fide* transaction where he and Smith
both intended that the grain should be actually de-
livered, how could he be relieved of the obligation to
make an actual delivery by simply purchasing, an hour
later, on the board of trade, a similar quantity of oats
from an utter stranger to the original transaction?
And yet it is alleged that this second transaction was
made for the sole purpose of counteracting the previous
transaction. It requires too great a strain upon the
credulity of courts to say that they must presume that
the parties intended to make an actual sale and delivery
of grain. There is no averment that either of the par-
ties had any thought or intention that anything more
would be done than a settlement by the defendant pay-
ing the difference between the fluctuations of the market
price from day to day.

"Parties are always presumed to intend the natural
consequences of their acts. When Kruse gave the order
for the purchase of the grain, and made his deposit, and
then, as soon as there was a rise in the market price,
sold out the grain, the presumption is that he intended,
when he first made the purchase, to sell out as soon as
there was a rise. And when the plaintiff in error, or
its agent, aided him in the transaction, and helped him
to carry out the transaction in this illegal way, it is idle
to say that the plaintiff in error did not know what the
intention of Kruse was." (*Weare Commission Co. v.
The People,* 209 Ill. 528, 541, 70 N. E. 1076.)

(See, also, *Jamieson v. Wallace,* 167 Ill. 388, 47 N. E.
762.)

Since the transactions declared upon as a basis for the several causes of action are in direct violation of the statute, the broker or commission merchant is *particeps criminis,* and he can not recover for his services, nor for losses incurred, nor for advances made by himself in behalf of the defendant in carrying out the illegal transaction. As tending to support these views, see *Washer v. Bond,* 40 Kan. 84, 19 Pac. 323; *Hutchins v. Stanley,* 88 Kan. 739, 129 Pac. 1180; *Carey v. Myers,* 92 Kan. 493, 141 Pac. 602; 20 Cyc. 952.

The judgment is affirmed.