## No. 8687.

### NATIONAL SURETY COMPANY ET AL. *v.* WILSON.

1. BANKING ACT—*Construction.* The Banking Act (Laws 1907, c. 111, Laws 1911, c. 79) is to be liberally construed for the protection of the bank, its depositors and stock holders.

2. *Construed.* A loan of any amount whatever to one who is already indebted to the bank in excess of the statutory limit is a violation of section 30 of the Act of 1907.

3. PRINCIPAL AND SURETY—*Surety's Liability.* The bond of a cashier of a bank provided that the surety should not be liable unless the default of the officer through which loss might happen, should occur on or after the date of the bond. An excessive loan made prior to the date of the bond, and subsequently renewed does not charge the surety.

The surety's contention that notwithstanding an existing excess in the indebtedness of a customer, the cashier might make an additional loan to him, in an amount not exceeding the statutory limit, rejected.

So the contention that in case of a loan in excess of the statutory limit, the surety is liable only for the excess.

Loans in excess of twenty per cent. of the capital, to a single customer held a breach of the bond, and the surety chargeable.

4. EVIDENCE—*Summary of Accounts.* In an action upon the bond of the cashier of a bank an accountant was permitted to testify from brief tabulated statements, made by himself, as to what appeared by the books of the bank. The books were present in court, and the accountant referred to them for verification whenever requested. *Held* the admission of the testimony was not prejudicial **error.**

*Error to Fremont District Court, Hon. Chas. A. Wilkin, Judge.*

Mr. GEORGE P. STEELE, for plaintiffs in error.

Mr. JOSEPH D. BLUNT, Mr. CHARLES D. BRADLEY and Mr. DELBERT A. HESSICK, for defendant in error.

Mr. Justice Scott delivered the opinion of the court.

THE Florence State Bank was organized and commenced business December 2, 1901, with a capital stock of $30,000. The record discloses that the bank had no surplus. The bank became insolvent and was taken in charge by the State Bank Commissioner on March 4, 1913. Newton Large was the cashier from the organization to its close.

This action is to recover on two certain surety bonds executed by Large as cashier, and the National Surety Company, plaintiff in error, as surety, each in the penal sum of $7,500 as provided by sec. 39, Chapter 111, Laws of 1907.

The first bond covered the period beginning January 1, 1908, and ending December 31, 1908. The second bond as continued, covered the period from December 31, 1908, until the bank was closed by the Bank Commissioner. Judgment was entered against the defendant surety company to the extent of its liability, $7,500. The plaintiff in error brings the case here for review.

Section 29 of the Act of 1907, provides:

"No director of any bank in this state shall be permitted to borrow money from such bank in excess of ten per cent of the capital and surplus of such bank, without the consent of a majority of the directors of the bank (other than the borrower) first having been obtained at a meeting of the Board; said consent to be made a matter of record before loan is made; and no officer, whether a director or not, shall be indebted to such bank in any sum whatever without the consent of the Board, obtained and recorded in like manner."

Section 30 provides, among other things:

"The total liability to any bank of any person or company, corporation or firm, for money borrowed, including in the liabilities of a company or firm, the liabilities of the several members thereof, shall not at any time exceed twenty per cent of the capital stock and surplus of such bank, actually paid in."

This section contains certain exceptions, not involved. The Act of 1907 was amended or rather supplemented by the Act of 1911, in force and effect on September 3, 1911. The new features of the latter act in so far as they may have possible bearing on this case are provided by sec. 33, chap. 79, as follows:

"No bank shall loan to any officer or employe thereof. No officer or employe of any bank shall become endorser for any person, firm or corporation borrowing money there from without the approval of the Board of Directors entered of record in the minutes of the board. * * * Loans to directors in excess of ten per cent of the capital stock and surplus of the bank shall be made only with the approval of a majority of the Board of Directors, exclusive of the borrower, entered of record in the minutes of the Board. No bank shall become the creditor of its stockholders collectively in an amount exceeding 40 per cent of its capital."

Each of the bonds sued on, provided expressly that there should be no liability on the part of the surety company, unless the default, through which loss may happen, shall in respect to said officer occur on or after the date of the bond.

The condition of each bond was:

"NOW THEREFORE, if the above bounden officer shall faithfully perform his duties and trusts, and shall not cause any loss whatsoever, through acts or ommissions in violation of or contrary to the criminal statutes or banking laws of the State of Colorado, then this obligation to be void, otherwise to be and remain in full force and effect."

The complaint alleges violations of the law, which for

convenience may be classed as five groups of indebtedness, and as seemingly well stated by plaintiff in error, as follows: Group 1. The Parnall indebtedness, alleged to be in excess of twenty per cent of the capital stock and surplus, consisted of sundry promissory notes executed by Parnall, aggregating in amount over twelve thousand dollars, and other promissory notes, some executed by the Florence Iron Works Company, and some by E. M. McDonald and E. P. McDonald, respectively, a company of, and relatives of Parnall, aggregating over sixteen thousand dollars. Group 2. The Andrews indebtedness consisted of sundry promissory notes aggregating over seventeen thousand dollars. Group 3. The Gibbs Jewelry Company, consisted of two promissory notes and an overdraft, making up a total of over six thousand dollars. Group 4. The indebtedness of Newton Large, E. V. K. Large, his wife, and The Smitham Car Wheel Company, his company, represented by sundry promissory notes and aggregating a total indebtedness of over twelve thousand dollars, all said to be the personal indebtedness of Newton Large, and in violation of the banking laws, and made without the consent of a majority of the directors of the bank. Group 5. That Large, as cashier, permitted and consented to loans to stockholders amounting collectively to over fourteen thousand dollars, which amount being in excess of two-fifths of the capital stock of the bank. That the bank was insolvent and that these indebtednesses were uncollectable.

The court found generally for the plaintiff and made specific findings of fact in relation to the several groups of loans, in brief and in substance as follows:

1. That Large as cashier, permitted himself and the Smitham Car Wheel Company, a co-partnership of which he was a member, to borrow money from the bank in excess of ten per cent of the amount of the capital stock of the bank in the total amount of $12,599 without the consent of a majority of the directors, and so to become a borrower of the bank in such sum.

2.    That Large as such cashier permitted himself and another stockholder, to-wit: S. P. Large, to borrow from the bank sums in the aggregate of $14,974.75.

3.    That Large as cashier, permitted loans to stockholders in excess of twenty per cent of the capital stock as follows:   A. W. Parnall and his privies for money borrowed after January 1, 1908, in the total sum of $28,048.29, which included a balance as of date of January 1, 1908; H. S. Andrews, $7,691.14, which included a debt incurred prior to January 1, 1908, of $7,039.61, after application of ten thousand dollars paid in 1908, and 1912, amounting to $14,730.75 due by said Andrews and his privies March 4, 1913; the Gibbs Jewelry Co., in the amount of $6,353.15; to Large himself, $7,740.00, which together with the indebtedness of the Car Wheel Company, of which Large was a partner, in the sum of $4,789, making a total of $12,529.57.

The receiver testified that the debts of the bank exceeded its assets by about $60,000.

The first contention of plaintiff in error is that the indebtedness so found by the court existed on January 1, 1908, and is the result of renewals of loans then existing. That by the terms of the bonds, the surety was not to be held liable for debts existing prior to January 1, 1908, and that in law, renewals do not constitute a new debt, but are simply continuation of the old debts.   It will be observed that the court in its findings of fact included debts existing prior to January 1, 1908, and renewals thereof.   But this holding was in no sense material or necessary to sustain the judgment, for the reason that there was sufficient specifically found indebtedness, afterward occurring, and unlawfully permitted, to greatly exceed the obligation under the bonds.

The contention of the plaintiff in error, that the mere renewal of a note is not an extinguishment of the old debt, but is simply a continuation of that debt, and that such renewal in no way changes the debt, except to postpone the time of payment, must be sustained.  *Collins et al. v. Dawley,* 4 Colo. 138, 34 Am. Rep. 72; 7 Cyc. 877, par. b; *Adler*

*v. United States,* 182 Fed. 464, 104 C. C. A. 608; *Coffin v. United States,* 162 U. S. 664, 16 Sup. Ct. 943, 40 L. Ed. 1109; *Hutchins v. Stanley,* 88 Kan. 739, 129 Pac. 1180; *Savings Bank v. Central Market Co.,* 122 Cal. 28, 54 Pac. 273; *Jagger Iron Co. v. Walker,* 76 N. Y. 521; *Tyler v. Anderson,* 106 Ind. 185, 6 N. E. 600. Indeed no authorities are cited to the contrary. We must therefore hold that the surety company cannot be held liable on the bond for a mere renewal of a debt, or any part thereof, existing prior to the date of the first bond, January 1, 1908.

But plaintiff in error makes the further contention that notwithstanding existing excess indebtedness to the bank, the officer of the bank may make new and additional loans to the same parties, in further amounts not exceeding the limit provided by statute. And further, that in case of an excess loan made by the bank, the surety is liable only for an amount in excess of the amount permitted under the statute, and is not liable for the entire excess loan. No authorities are cited to sustain these contentions and we know of none, and are of the opinion that neither contention can be sustained in sound reason or justice.

The clear policy and object of the law was the protection of the stockholders and depositors, by limitation as to the amount of loans to any one person, firm or corporation, or to officers or directors of the concern.

Indeed in the case of the statutory prohibition as related to borrowers, who are not officers, the statute expressly declares: "The total liability to any bank of any person or company, corporation or firm, for money borrowed, including the liabilities of the several members thereof, shall not at any time exceed twenty per cent of the capital stock of such bank, actually paid."

Certainly the term "total liability" must be held to include pre-existing loans, as well as additional loans, and it is thus made plain by the language of the statute itself, that if one person has an existing liability in excess of the limitation, it is a palpable violation of the statute to make to such person an additional loan in any amount whatsoever.

Both acts provide that no director shall be permitted to borrow money from a bank in excess of ten per cent of the capital stock and surplus of the bank, without the consent of a majority of the board of directors, exclusive of the borrower, obtained at a meeting of the board, and to be made a matter of record.

In no instance involved in this case was there any such consent obtained. He may not borrow from the bank in excess of such limit. It would be absurd to say that he may have borrowed an amount in excess of the limit, for which he is at the time obligated, and be permitted to borrow additional amounts equal to the limit of the statute. This would violate the spirit, purpose and letter of the statute as we read it. These views are sustained in the case of *Wickliffe v. Turner,* 154 Ky. 571, 157 S. W. 1125, where it was held that statutes making bank officers liable for loans in excess of permitted amounts, are for the benefit of the bank, its depositors and stockholders, and will be liberally construed to promote their purpose. It was further held in that case that where an excess loan was so made, the officers become liable for the whole of such loan.

Considering the undisputed facts in the light of these conclusions, we find in case of the Parnall indebtedness that on January 1st, the date of the first bond, this indebtedness totaled the sum of $25,159.24. There were credits and new loans made during the year 1908, with the net result that the indebtedness was greatly reduced, so that on the first day of January, 1909, the date of the new surety bond, the total Parnall indebtedness to the bank was $15,435.84. This indebtedness was afterward and on different dates, increased so that on the 4th day of March, 1913, when the bank closed, it was $28,048.29.

Plainly under this state of facts, no more than the existing debt of $15,435.84 on January 1, 1909, can under any theory be held to be renewals, and clearly the difference of $12,617.45 was an increase between these dates, all permitted in violation of the law. This in itself is sufficient to support the judgment of the court.

Referring to the group styled the Andrews indebtedness; this totaled $17,639.61 on January 1, 1908. There was no time from that date until the bank closed that this indebtedness was not largely in excess of twenty per cent of the bank's capital. Loans were granted between these dates as follows: July 14, 1908, note in the sum of $3,000; May 7, 1909, note for $1,000; June 24, 1910, note for $2,600, making a total of $6,600, all of which was permitted in addition to the prior existing indebtedness in excess of the statutory limit, and no part of which was for renewals, and therefore in violation of the statute.

It is true that there were two credits allowed on this general indebtedness of $1,800 and $8,800 respectively, but these had no relation whatever to the new loans above stated. These loans were clear infractions of the law.

As relates to the Newton Large indebtedness the testimony shows that on January 1, 1908, he owed the bank $2,395. In addition to this, and while the bonds were in force and effect, an additional loan was made to Large of $3,305, and loans to his wife, which the court found to the use and benefit of Large, in the total sum of $2,040, making a total of $5,345 loaned to Large subsequent to the making of the surety bond and for which the surety company must be held to be liable. In this connection we have not considered the Car Wheel Company indebtedness of $4,789.57, which the court found should be included in the Large indebtedness, on the ground that Large was a partner in the concern, nor have we considered the indebtedness of S. P. Large, a stockholder in the sum of $2,445.18, for the reason that these are neither necessary nor important to the determination of the case.

The Gibbs Jewelry Company loan made while the bond was in force, was for $6,053.15 and therefore in excess of the limit of the statute, and under the rule herein before stated, the surety company was liable for the full amount of the loan.

It is clear from the testimony, that all the unlawful loans complained of, resulted in total loss to the bank to the ex-

tent thereof. They apparently were all charged off the books of the bank as worthless, by direction of the bank commissioner, prior to the failure of the bank, and have not since been paid.

It appears that subsequent to the failure of the bank Large executed a mortgage to the receiver, covering certain property in the city of Denver, and to secure or partially secure his debts.

Error is alleged as to the competency of a witness to prove the value of this property. This is immaterial, for under any contended value this cannot affect the fact of the insolvency of the bank, nor relieve the surety company to the full extent of its obligation from its liability on account of the illegal loans.

Error is alleged in receiving the testimony of witness Pfeiffer, who testified as an expert accountant, and who was permitted to give his testimony from brief tabulated statements as to what appeared from the books of the bank, it being contended that the books themselves were the best evidence. The books of the bank were at hand and in court. Pfeiffer was the bank commissioner who closed the bank, had charge of them for some months, and his statements were based on examinations.

The court at the time of overruling the objection remarked: "The books are available on which to correct the answer of the witness if there should be any mistake in it, and I understand the witness to speak from the books." The witness referred to the books for verification whenever requested.

It is not contended that there was error or mistake in any of this testimony as to what the books actually contained, or that the plaintiff in error was in any sense prejudiced thereby. The testimony was merely a summary as to what the books show, and computations therefrom.

That the books are the best evidence of what they contain must be admitted, but the plan adopted by the court is one commonly pursued where there are voluminous entries covering varied transactions for a period of years,

and where each statement is subject to verification at the time. The ruling of the court in this respect did not constitute prejudicial error. *Boston & W. R. R. Co. v. Dana,* 1 Gray 82; *San Pedro Lumber Co. v. Reynolds,* 121 Cal. 74, 53 Pac. 410; *State v. Brady,* 100 Ia. 193, 69 N. W. 290, 36 L. R. A. 603, 62 Am. St. 560; *Jorden v. Warner's Estate,* 107 Wis. 539, 83 N. W. 946; *Culver v. Marks,* 122 Ind. 554, 23 N. E. 1086, 7 L. R. A. 489, 17 Am. St. 377.

The judgment is affirmed.

*En banc.*